STATE OF NEBRASKA, APPELLEE, V.
PAUL E. MARCUS, APPELLANT.
660 N.W.2d 837

Filed May 9, 2003.   No. S-02-997.

Franklin Elliott Miner for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.
Paul E. Marcus appeals the overruling of a motion to suppress photographs that were authorized by an order to produce identifying physical characteristics. He contends that the affidavit for the order lacked probable cause because law enforcement officers failed to show that an informant's information was based on personal knowledge. He also argues that the order does not comply with Neb. Rev. Stat. § 29-3305 (Reissue 1995). We determine that the informant was a citizen informant whose information was sufficiently corroborated and that the order complied with § 29-3305. Accordingly, we affirm.

## BACKGROUND
On August 27, 2001, Jodie Carlton, a salesclerk for Goodwill, observed a man entering the store. The man was described as a darker skinned male, possibly East Indian, 35 to 40 years of age, 5 feet 8 inches tall, medium build, wearing a black T-shirt with white lettering and dark blue gym shorts. He walked to the counter and asked where the gym shorts were. He later returned

wearing a pair of yellow shorts and asked Carlton if the shorts were too tight. Carlton observed that he was fondling his genitals outside of the shorts. He then walked around the counter to the entry area and asked Carlton to check the size of the shorts. While standing in front of Carlton, he asked Carlton to see if there was a tag inside the shorts, pulled the back and front of the shorts down, and exposed his penis. He then returned to the dressing room and left after changing clothes. Carlton told the police that she believed she could identify the man from a photographic lineup.

Two days later, Dina Hopper, an employee of the Nebraska Game and Parks Commission, called Sgt. Joseph Wright of the Lincoln Police Department after reading an article about the offense in the Lincoln Journal Star newspaper. Hopper told Wright that Marcus matched the suspect description. She stated that Marcus was a problem at area lakes because he would often contact young women, ask if his shorts or swimsuit was too small, and then expose himself.

The police did not have a photograph of Marcus in their imaging system. Wright contacted Marcus and, according to his police report, asked Marcus if he was in the area of the Goodwill store on "Monday, 08-28." This appears to be a typographical error because the incident occurred on Monday, August 27, 2001. Marcus stated that he may have been in the area of the Goodwill store at the time of the incident, but that he did not go inside the store. He refused to have his photograph taken.

Wright prepared an affidavit repeating the information obtained from Carlton, Hopper, and Marcus. The affidavit also contains the same reference to "Monday, August 28, 2001," as in the police report. Wright stated in the affidavit that the procurement of photographs of Marcus was necessary to determine whether he was the individual responsible for the crime.

The county court entered an order to produce physical identifying characteristics. One provision of the order authorized the Lincoln Police Department to obtain the evidence at the police department or "where ever deemed most practical by officers of the Lincoln Police Department." Another provision stated that Marcus "shall appear at the Lincoln Police Department . . . at such date and time as is designated by Sergeant Joseph Wright

for the purpose of obtaining the above-mentioned physical characteristic evidence."

Marcus was later contacted at his residence, and photographs were obtained. Carlton identified Marcus in a photographic lineup, and he was arrested. Marcus' motion to suppress the photographs was overruled. The county court concluded that the affidavit established probable cause because Hopper identified Marcus as meeting the description of the perpetrator, Marcus was identified as using the same language in making contact with other victims, and Marcus had placed himself in the area of the crime at the time it was committed. Marcus was convicted of indecent exposure and was fined $500. The district court affirmed, concluding that there was probable cause and that the order met the requirements of § 29-3305. Marcus appeals.

## ASSIGNMENTS OF ERROR

Marcus assigns that the county court erred in overruling his motion to suppress and finding him guilty and that the district court erred in affirming the county court's decision.

## STANDARD OF REVIEW

■ When the underlying circumstances are detailed in the affidavit, reason for crediting the source of the information is given, and when a magistrate has found probable cause, the duty of a court reviewing the issuance of a warrant is to ensure that the magistrate had a substantial basis for concluding that probable cause existed. See *State v. Duff*, 226 Neb. 567, 412 N.W.2d 843 (1987).

## ANALYSIS

Marcus contends that the affidavit was insufficient to show probable cause because it does not establish Hopper's credibility or the accuracy of her statements.

■ The identifying physical characteristics statutes, Neb. Rev. Stat. §§ 29-3301 to 29-3307 (Reissue 1995), require a showing of probable cause to believe the person seized has engaged in an articulable criminal offense before the judicial officer can issue an order to produce identifying physical characteristics. *State v. Evans*, 215 Neb. 433, 338 N.W.2d 788 (1983). When determining whether an order to produce identifying physical characteristics

was based on a showing of probable cause, we consider the totality of the circumstances. *Id.* See *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). Under this standard, the magistrate who is evaluating the probable cause question must make a practical, commonsense decision. *State v. Faber*, 264 Neb. 198, 647 N.W.2d 67 (2002). An appellate court's after-the-fact scrutiny of the sufficiency of an affidavit should not take the form of a de novo review. *Id.* A magistrate's determination of probable cause should be paid great deference by reviewing courts. *Id.*

In the context of a search warrant, we have said that when the warrant is obtained on the strength of information from an informant, the affidavit in support of issuance of the warrant must set forth facts demonstrating the basis of the informant's knowledge of criminal activity. *State v. Faber, supra.* Further, the affiant must establish the informant's credibility or the informant's credibility must be established in the affidavit through a police officer's independent investigation. *Id.* The reliability of an informant may be established by showing in the affidavit to obtain a search warrant that (1) the informant has given reliable information to police officers in the past, (2) the informant is a citizen informant, (3) the informant has made a statement that is against his or her penal interest, or (4) a police officer's independent investigation establishes the informant's reliability or the reliability of the information the informant has given. *Id.*

Here, nothing in the affidavit indicates that Hopper gave reliable information to the police in the past or made a statement against penal interest. Therefore, the first question is whether Hopper is a citizen informant.

The status of a citizen informant cannot attach unless the affidavit used to obtain a search warrant affirmatively sets forth circumstances from which the informant's status as a citizen informant can reasonably be inferred. *State v. Peters*, 261 Neb. 416, 622 N.W.2d 918 (2001). When considering the sufficiency of probable cause based on information supplied by an informant, it is important to distinguish the police tipster—who acts for money, leniency, or some other selfish purpose—from the citizen informer, whose only motive is to help law officers in the suppression of crime. *State v. Lytle*, 255 Neb. 738, 587 N.W.2d 665 (1998), *disapproved in part on other grounds, State v. Johnson,*

256 Neb. 133, 589 N.W.2d 108 (1999). Unlike the professional informant, the citizen informant is without motive to exaggerate, falsify, or distort the facts to serve his or her own ends. *Id.* A citizen informant is a citizen who purports to have been the witness to a crime who is motivated by good citizenship and acts openly in aid of law enforcement. *Id.*

Here, Hopper was a citizen informant. She acted openly to assist law enforcement, and nothing in the record suggests that she had a motive to exaggerate, falsify, or distort the facts to serve her own ends. Instead, it is reasonable to infer that she was motivated by good citizenship.

Although Hopper was a citizen informant, the affidavit did not present her as a direct witness to the incidents that she reported to the police. As a result, the affidavit failed to show that Hopper's information was based on personal knowledge. We conclude that this factor does not change Hopper's status as a citizen informant. Instead, the question is the extent to which law enforcement must independently investigate the information provided by Hopper in the absence of evidence that Hopper had personal knowledge of the reported events.

Once an individual is considered to be a citizen informant, reliability still must be shown, but it may appear by the very nature of the circumstances under which the incriminating information became known. *State v. Duff*, 226 Neb. 567, 412 N.W.2d 843 (1987). Thus, we have said that an informant's detailed eyewitness report of a crime may be self-corroborating because it supplies its own indicia of reliability. *Id.* We have also said that an untested citizen informant who has personally observed the commission of a crime is presumptively reliable. *State v. Detweiler*, 249 Neb. 485, 544 N.W.2d 83 (1996); *State v. Duff, supra.* But when a citizen informant's information is based on another person's statements, courts have concluded that law enforcement officers are required to make further inquiry about the underlying facts and circumstances on which the report is based. This reduces the possibility of mistake and satisfies the minimum standards for establishing probable cause. See, e.g., *State v. Williamson*, 290 Mont. 321, 965 P.2d 231 (1998).

Here, when the affidavit does not establish that Hopper's information was based on personal knowledge, her information is not

entitled to the presumption of reliability. But law enforcement officers also corroborated some of the information provided by Hopper and Carlton. Law enforcement officers visited with Marcus and observed that he met the physical description of the suspect. This corroborated Hopper's statement that Marcus fit the description that she read about in the newspaper. Law enforcement officers were also able to observe that Marcus met the description given by Carlton. Marcus was then asked if he had been in the area of the Goodwill store on the date of the offense, and he answered affirmatively.

We consider whether, under the totality of the circumstances, the issuing magistrate had a substantial basis on which to find probable cause. We conclude that the ability of law enforcement officers to confirm that Marcus met the description of the suspect as given by Carlton, along with Marcus' statement that he had been in the area of the Goodwill store on the date of the crime, established a substantial basis on which the magistrate could find probable cause to issue the order. Thus, we determine that the court was correct when it determined that the affidavit was valid and denied the motion to suppress.

Marcus next contends that the order does not comply with § 29-3305, because the order was vague or overbroad concerning where and when the photographs could be taken.

Section 29-3305 provides:

Any order issued under sections 29-3301 to 29-3307 shall specify (1) the character of the alleged criminal offense which is the subject of the application; (2) the specific type or types of identifying physical characteristic evidence which are sought; (3) the identity or description of the individual who may be detained for obtaining such evidence; (4) the name and official status of the peace officer or officers authorized to obtain such evidence and to effectuate any detention which may be necessary to obtain the evidence; (5) the place at which the obtaining of such evidence may be carried out; (6) that the person will be under no legal obligation to submit to any interrogation or to make any statement during the period of his appearance except that required for voice identification; (7) that the individual shall forthwith accompany the officer serving the order for the

purpose of carrying out its objectives, or, in the alternative, fixing a time at which the individual shall appear for the purpose of carrying out the objectives of the order . . . .

The order authorized the Lincoln Police Department to obtain the evidence at the police department or "where ever deemed most practical by officers of the Lincoln Police Department." Although lacking in specific detail, we conclude this statement meets § 29-3305(5), which requires the order to state the place at which the obtaining of physical evidence may be carried out.

The order also stated that Marcus "shall appear at the Lincoln Police Department . . . at such date and time as is designated by Sergeant Joseph Wright for the purpose of obtaining the above-mentioned physical characteristic evidence." Marcus argues that this statement is inconsistent with the provision of the order allowing the evidence to be obtained wherever was deemed most practical. But this statement is also specifically required by § 29-3305(7), which requires the order to state that the individual shall accompany the officer serving the order or shall fix a date and time at which the individual shall appear for purposes of carrying out the order.

Marcus also argues that the ability of law enforcement officers to take his photograph in front of his home created an embarrassing situation. The record indicates that law enforcement officers took the photograph at Marcus' residence to save him the trouble of coming to the station. Further, our concern on appeal is whether the order complied with § 29-3305. We conclude that the order contained the information required by § 29-3305 and that the court correctly overruled the motion to suppress.

AFFIRMED.