State of Nebraska, appellee, v.
Gregory Lammers, appellant.
676 N.W.2d 716

Filed April 2, 2004. No. S-02-1206.

Bradley E. Nick, of Sidner, Svoboda, Schilke, Thomsen, Holtorf, Boggy & Nick, for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Gregory Lammers was convicted in the district court for Dodge County, Nebraska, of possession of methamphetamine with intent to deliver and was sentenced to 4 to 5 years' imprisonment. Lammers appeals his conviction and assigns error to the denial of his motion to suppress evidence obtained from a search of his residence. He argues that the search warrant was improperly issued because the supporting affidavit did not establish probable cause and that the search was unreasonable because police officers conducted an improper "knock-and-announce" search pursuant to the warrant. We affirm.

## STATEMENT OF FACTS

On April 12, 2002, the State filed an information charging Lammers with one count of possession of methamphetamine

with intent to deliver. The charge against Lammers was based on evidence seized in a search of Lammers' residence, which search was conducted on March 22 pursuant to a search warrant. That evidence included approximately 80 grams of methamphetamine and $8,507 in cash.

On June 7, 2002, Lammers filed a motion to suppress all evidence seized as a result of the March 22 search. Lammers made two arguments in support of suppression: (1) the search warrant was issued on the basis of an affidavit that failed to establish probable cause and (2) the police officers executing the search warrant failed to conduct a proper "knock and announce" prior to forcibly entering his residence.

The search warrant for Lammers' residence was issued by the Dodge County Court on March 21, 2002. The county court concluded that the affidavit of Shane Wimer, a Fremont, Nebraska, police officer, established probable cause to support issuance of the warrant. In the affidavit, Wimer stated his belief that controlled substances and evidence of the use, sale, or distribution of controlled substances would be found in a search of Lammers' residence. Wimer made the following assertions to support his conclusion: On March 4, 2002, a police officer identified as "K Pafford" was called to a bank in Fremont to investigate a report of possible drugs found in the bank. At the bank, Pafford was given a corner of a plastic baggie containing approximately 3.2 grams of a yellow powdery substance which later tested positive for methamphetamine. A bank employee told Pafford that Lammers had been in the bank to make a deposit and that while at a teller window, Lammers removed some items from his pocket. Shortly after Lammers left the bank, the plastic baggie corner containing the yellow-powdered substance was located on the floor "in nearly the same spot" where Lammers had been standing.

Wimer also stated in the affidavit that a house located on North Madison Street in Fremont was under the control or custody of Lammers. Wimer stated that on March 7, 2002, he performed a sanitation check at that location and found 19 enumerated items that he asserted would support his conclusions that the location was Lammers' residence and that the use of controlled substances had occurred there. These items included various

pieces of correspondence addressed to Lammers, notes and correspondence to others, various pieces of paper with names and telephone numbers written on them, a glass beer bottle with burn residue that appeared to have been turned into a homemade glass pipe, one plastic baggie with the corner missing, one plastic baggie with the bottom missing and heat sealed, plastic baggie corners, and various pieces of aluminum foil both with and without burn residue.

Wimer also stated in the affidavit that he performed another sanitation check on March 14, 2002, and found 13 enumerated items including additional pieces of paper with names and telephone numbers, additional pieces of aluminum foil with multiple folds both with and without burn residue, and a piece of wire. The affidavit further stated that another police officer performed a sanitation check on March 21 and found 14 enumerated items including additional items similar to those found in the earlier checks and, in particular, 8 plastic baggies with corners missing and 28 pieces of aluminum foil of which 12 had burn residue.

Wimer stated in the affidavit that he had knowledge that aluminum foil with folds and burn residue of the type found in the sanitation checks indicated the use of such foil for ingestion of powdered controlled substances. Wimer indicated that his training and experience with methods of ingestion indicated that the glass beer bottle found in the sanitation check could have been used as a pipe to smoke a powdered controlled substance. Wimer knew that baggie corners and baggies with corners torn indicated the packaging and resale of controlled substances. Wimer also stated that the wire found in the March 14, 2002, sanitation check was of the same type and size as a wire found with the plastic baggie from the bank.

Wimer also stated in the affidavit that in the summer of 2001, he witnessed at least two occasions where a car pulled up to the North Madison Street residence and a passenger exited the vehicle and entered the residence while the driver and other passengers stayed in the vehicle. The passenger who exited remained inside the residence less than 10 to 15 minutes.

Wimer further stated that he had conducted a criminal history check of Lammers. The check revealed that Lammers' criminal history included a 1984 arrest in South Dakota for possession of

a controlled substance and a 1985 arrest in Nebraska for using an explosive device to damage property. The check also revealed that on January 7, 2002, 2 months prior to the bank episode of March 4, Lammers had been arrested in Washington County, Nebraska, for possession of methamphetamine and possession of drug paraphernalia. The Washington County case had not yet gone to trial; however, Wimer spoke to the investigating officer who indicated that Lammers had been visiting a residence in Washington County when officers executed a search warrant and found Lammers to be in possession of methamphetamine and a glass pipe.

Wimer also stated that a woman whose name showed up on various pieces of paper and correspondence found in the sanitation checks of Lammers' residence was known to be involved in the drug culture.

At the hearing on Lammers' motion to suppress, Wimer testified regarding the execution of the search warrant. Wimer had presented his affidavit and request for a search warrant to the Dodge County Court on March 21, 2002, and the county court issued the daytime knock-and-announce warrant that day.

On March 22, 2002, Wimer and several other police officers executed the search warrant. They arrived at Lammers' residence at approximately 10 minutes after 7 a.m. Wimer testified that the residence was a small, two-bedroom residence with a bathroom, kitchen, living room, and a basement and that the residence had both a front door and a back door. Upon their arrival, Wimer instructed another officer, Stuart Nadgwick, who was first in line, to knock and announce. Nadgwick knocked and yelled, "Police department, search warrant." Nadgwick waited 8 seconds and knocked and announced the presence of police a second time. Wimer heard no activity inside the house. Following the second knock and announce and having received no response, Nadgwick called up another officer to use a ram to force entry. The officers used the ram to open the door and entered the residence. Wimer estimated that 10 to 12 seconds passed between the first knock and announce and the use of the ram to force entry. Wimer testified that he believed 10 to 12 seconds to be sufficient for someone to answer the door in a house the size of Lammers' residence and that he was generally

concerned that to wait longer could have resulted in the destruction of evidence.

Nadgwick also testified at the hearing. He testified that Wimer informed him prior to the police officers' arrival at the door that he should wait 8 seconds after the first knock and announce. After the first knock and announce, Nadgwick waited 8 seconds by counting "one thousand one, one thousand two, one thousand three, et cetera, until eight one thousand." Nadgwick did not hear any activity inside the house while waiting the 8 seconds. A second knock and announce was made. Nadgwick agreed with Wimer's estimate that 10 to 12 seconds elapsed between the first knock and announce and the time the door was rammed. When Nadgwick entered the residence, he observed Lammers standing in street clothes approximately 7 to 8 feet from the door.

In a written journal entry filed on June 26, 2002, the district court overruled both parts of Lammers' motion to suppress. Although the district court did not articulate its findings as indicated in *State v. Osborn*, 250 Neb. 57, 547 N.W.2d 139 (1996), the parties agree that there is no factual dispute that there were 10 to 12 seconds between the first knock and announce and the ramming of the door. We consider the merits of the motion to suppress on this basis.

A bench trial on stipulated facts was held on August 27, 2002. On August 30, the district court entered an order finding Lammers guilty of possession of methamphetamine with intent to deliver. On October 1, the district court sentenced Lammers to 4 to 5 years' imprisonment. Lammers appeals.

## ASSIGNMENTS OF ERROR

Lammers asserts that the district court erred in denying his motion to suppress evidence and in admitting such evidence at trial because (1) there was no probable cause to support issuance of the search warrant and (2) the search warrant was improperly executed when police officers failed to properly knock and announce prior to forcibly entering his residence.

## STANDARDS OF REVIEW

A trial court's ruling on a motion to suppress, based on a claim of insufficiency of the affidavit supporting issuance of a

search warrant, will be upheld unless its findings are clearly erroneous. See *State v. Mata*, 266 Neb. 668, 668 N.W.2d 448 (2003). In reviewing the strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant, an appellate court applies a "totality of the circumstances" test. The question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause. *State v. March*, 265 Neb. 447, 658 N.W.2d 20 (2003). In evaluating the sufficiency of an affidavit used to obtain a search warrant, an appellate court is restricted to consideration of the information and circumstances contained within the four corners of the affidavit, and evidence which emerges after the warrant is issued has no bearing on whether the warrant was validly issued. *Id.*

In connection with a challenge to the execution of a search warrant, in reviewing a trial court's ruling on a motion to suppress evidence, ultimate determinations of reasonable suspicion are reviewed de novo by an appellate court, while findings of historical fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge. *State v. Kelley*, 265 Neb. 563, 658 N.W.2d 279 (2003).

## ANALYSIS

*Sufficiency of Affidavit in Support of*
*Issuance of Search Warrant.*

Lammers first argues that the search warrant was improperly issued because the affidavit supporting the warrant did not establish probable cause. Lammers tends to focus on the fact that the bank employee was not identified by name in the affidavit and asserts that without the information imparted by the bank employee and the methamphetamine from the bank, the remainder of the affidavit does not establish probable cause. We determine that the affidavit was sufficient to support issuance of the search warrant.

A search warrant, to be valid, must be supported by an affidavit which establishes probable cause. *March, supra*. Probable cause sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found. *Id.*

One of the key pieces of information in the affidavit support-
ing probable cause in the present case was the bank employee's
report to police that possible drugs were found in the bank and
that the drugs were located near where Lammers had been stand-
ing shortly before their discovery. The bank employee's report
was significant because it identified Lammers as having been in
possession of a controlled substance and it prompted the investi-
gation that lead to the discovery of much of the other evidence
recited in the affidavit. Lammers argues that the information pro-
vided by the bank employee could not be used to support a find-
ing of probable cause because the affidavit does not identify the
bank employee by name and therefore the information was not
sufficiently reliable. We do not agree.

Although information provided by an informant must be
found to be reliable to support a finding of probable cause, a
finding of reliability does not necessarily require that the inform-
ant be identified by name. In the context of a search warrant, we
have said that when the warrant is obtained on the strength of
information from an informant, the affidavit in support of
issuance of the warrant must set forth facts demonstrating the
basis of the informant's knowledge of criminal activity. *State v.
Marcus*, 265 Neb. 910, 660 N.W.2d 837 (2003). Further, the affi-
ant must establish the informant's credibility or the informant's
credibility must be established in the affidavit through a police
officer's independent investigation. *Id.* The reliability of an
informant may be established by showing in the affidavit to
obtain a search warrant that (1) the informant has given reliable
information to police officers in the past, (2) the informant is a
citizen informant, (3) the informant has made a statement that is
against his or her penal interest, or (4) a police officer's indepen-
dent investigation establishes the informant's reliability or the
reliability of the information the informant has given. *Id.*

In the present case, the State asserts that the bank employee
was a citizen informant. We agree. A citizen informant is a citizen
who purports to have been the witness to a crime who is motivated
by good citizenship and acts openly in aid of law enforcement. *Id.*
The status of a citizen informant cannot attach unless the affidavit
used to obtain a search warrant affirmatively sets forth circum-
stances from which the informant's status as a citizen informant

can reasonably be inferred. *Id.* Unlike the police tipster who acts for money, leniency, or some other selfish purpose, the citizen informant's only motive is to help law officers in the suppression of crime. *Id.* Unlike the informant who acts out of self-interest, the citizen informant is without motive to exaggerate, falsify, or distort the facts to serve his or her own ends. *Id.* The bank employee in the present case was a witness to certain facts recited in the affidavit and acted openly to assist law enforcement. Nothing in the affidavit suggests that the bank employee had a motive to exaggerate, falsify, or distort the facts to serve his or her own ends, and it is reasonable to infer that the bank employee was motivated solely by good citizenship.

Lammers notes that the bank employee was not identified by name in the affidavit and therefore challenges the bank employee's status as a citizen informant. We reject the inference in Lammers' argument that the bank employee should be considered an anonymous informant whose reliability must be separately established, and instead, we determine that given the facts, the bank employee is not an anonymous source and that the information supplied by the bank employee is presumptively reliable. In this regard, we note that it has been observed that "[c]ourts have been lenient in their assessment of the type and amount of information needed to identify a particular informant. Many courts have found, for instance, that identification of the informant's occupation alone is sufficient [to negate a claim that the informant was anonymous]." *City of Maumee v. Weisner,* 87 Ohio St. 3d 295, 301, 720 N.E.2d 507, 514 (1999). Thus, for example, in *U.S. v. Pasquarille,* 20 F.3d 682 (6th Cir. 1994), the Court of Appeals for the Sixth Circuit concluded that although the informant's name was unknown, information that he was a transporter of prisoners was enough to identify him. In the instant case, the informant was identified in the affidavit as a bank employee who witnessed certain facts and it is apparent that the informant's identity, although not recited in the affidavit, was known to police. We consider the bank employee in this case to be a citizen informant and not an anonymous informant.

 Once an individual is considered to be a citizen informant, reliability still must be shown, but it may appear by the very nature of the circumstances under which the incriminating information

became known. *State v. Marcus*, 265 Neb. 910, 660 N.W.2d 837 (2003). Thus, we have said that an informant's detailed eyewitness report of a crime may be self-corroborating because it supplies its own indicia of reliability. *Id.* We have also said that an untested citizen informant who has personally observed the commission of a crime is presumptively reliable. *Id.*

It is clear from the affidavit that the bank employee personally observed the presence of drugs in circumstances which indicated that the drugs had been in Lammers' possession. Because the bank employee had no apparent motive other than good citizenship in reporting these observations, the bank employee's information is presumptively reliable and was properly used to support a finding of probable cause to issue the search warrant in this case. The information provided by the bank employee was combined with the other information detailed in the affidavit indicating that controlled substances were being used, sold, or distributed at Lammers' residence in Fremont. The information in the affidavit indicated a fair probability that contraband or evidence of a crime would be found in a search of the residence, and the issuing magistrate had a substantial basis for finding that the affidavit established probable cause. See *State v. March*, 265 Neb. 447, 658 N.W.2d 20 (2003). The district court did not err in denying Lammers' motion to suppress on this basis. We reject Lammers' first assignment of error.

*Execution of Search Warrant.*

Lammers next argues generally that because the police officers conducted an improper knock-and-announce search pursuant to the warrant, the search was unreasonable. Lammers specifically claims that the police were not refused admittance and improperly forced their way into his residence 10 to 12 seconds after the first knock and announce. The State counters that the police were constructively refused admittance and were therefore entitled to forcibly enter Lammers' residence. Based on the recent authority in *United States. v. Banks*, 540 U.S. 31, 124 S. Ct. 521, 157 L. Ed. 2d 343 (2003), the propriety of the execution of the warrant does not turn on refusal, and viewing the record under a totality of the circumstances analysis, after the second knock and announce in this case, an exigency justifying entry had matured and the search warrant was properly executed.

In Nebraska, freedom from unreasonable searches and seizures is guaranteed by U.S. Const. amend. IV and Neb. Const. art. I, § 7. *State v. Kelley*, 265 Neb. 563, 658 N.W.2d 279 (2003). Searches conducted pursuant to a warrant supported by probable cause are generally considered to be reasonable; consequently, if the police act pursuant to a search warrant, the defendant bears the burden of proof that the search or seizure is unreasonable. *Id*. Because the police in this case conducted the search of Lammers' residence pursuant to a warrant that was supported by probable cause, Lammers bore the burden to demonstrate that the search was unreasonable.

In a drug case involving execution of a search warrant, the U.S. Supreme Court recently considered whether a 15- to 20-second wait before a forcible entry at midday following a single knock and announce satisfied the Fourth Amendment. The Court concluded under a totality of the circumstances analysis that a reasonable suspicion of exigency existed and that the forcible entry was reasonable. In *Banks*, the police had information that Lashawn Banks was selling cocaine at his home, and the police obtained a warrant to search his two-bedroom apartment. Upon arriving at Banks' door, the officers knocked and announced their presence. There was no response and no indication that anyone was home. Fifteen to twenty seconds after the single knock and announce, the officers broke open Banks' door with a battering ram. The subsequent search of Banks' residence produced evidence of drug dealing. Banks' motion to suppress evidence obtained from the search was denied in federal district court. A divided panel of the Court of Appeals for the Ninth Circuit reversed, and ordered suppression. The U.S. Supreme Court reversed the Ninth Circuit's decision after concluding that the search satisfied the Fourth Amendment.

We note that the Court in *Banks* recognized at the outset that the officers therein "were obliged to knock and announce their intentions when executing the search warrant." 540 U.S. at 35. However, the Court thereafter stated that "when executing a [knock-and-announce] warrant . . . if circumstances support a reasonable suspicion of exigency when the officers arrive at the door, they may go straight in." 540 U.S. at 36-37. The Court in *Banks* observed that the case "turn[ed] on the significance of exigency

revealed by circumstances known to the officers." 540 U.S. at 37. In *Banks*, the Court found that an exigency, namely, the imminent disposal of drugs, had "matured," 540 U.S. at 40, 15 to 20 seconds after the officers knocked and announced their purpose a single time. The Court stated that "after 15 or 20 seconds without a response, police could fairly suspect that cocaine would be gone if they were reticent any longer." 540 U.S. at 38. The Court also stated that "15 to 20 seconds does not seem an unrealistic guess about the time someone would need to get in a position to rid his quarters of cocaine." 540 U.S. at 40.

In *United States. v. Banks*, 540 U.S. 31, 40, 124 S. Ct. 521, 157 L. Ed. 2d 343 (2003), the Court noted that "the crucial fact in examining [the reasonableness of the forced entry of police] is not time to reach the door but the particular exigency claimed . . . what matters is the opportunity to get rid of cocaine." That is, when the exigency claimed is disposal of drugs as evidence,

> it is imminent disposal, not travel time to the entrance, that governs when the police may reasonably enter; since the bathroom and kitchen are usually in the interior of a dwelling, not the front hall, there is no reason generally to peg the travel time to the location of the door, and no reliable basis for giving the proprietor of a mansion a longer wait than the resident of a bungalow, or an apartment like Banks'.

540 U.S. at 40.

In *Banks*, the Court reemphasized that the reasonableness of the execution of a warrant under the Fourth Amendment must be evaluated by examining the totality of the circumstances. 540 U.S. at 36 ("we have treated reasonableness as a function of the facts of cases so various that no template is likely to produce sounder results than examining the totality of circumstances in a given case"). The Court declined to set forth bright-line rules with respect to the analysis of the proper execution of warrants and instead emphasized the fact-specific nature of the reasonableness inquiry. Although the Court stated in *Banks* that the "call is a close one" as to whether the 15 to 20 seconds the officers waited prior to forcing their way in was sufficient, the Court determined that under the facts, which established a reasonable suspicion of exigency, the time was reasonable under the Fourth Amendment, "even without refusal of admittance." 540 U.S. at

38, 43. In footnote 5 of *Banks*, the Court cited, with apparent approval, other cases in which courts found similar or shorter waiting times to be reasonable in drug cases involving easily disposable evidence. E.g., *U.S. v. Markling*, 7 F.3d 1309 (7th Cir. 1993) (holding 7-second wait at small motel room reasonable when officers acted on specific tip that suspect was likely to dispose of drugs); *U.S. v. Garcia*, 983 F.2d 1160 (1st Cir. 1993) (holding 10-second wait after loud announcement reasonable).

We therefore review the district court's rejection of Lammers' challenge to the execution of the warrant by reference to the totality of the circumstances in the present case. At the outset, we note that the warrant at issue was a knock-and-announce warrant as contrasted with a "no-knock" warrant. See Neb. Rev. Stat. § 29-411 (Reissue 1995). The State argues, inter alia, that the police officers were justified in forcing their way into the residence after their first knock and announce because they were searching for evidence of drugs and such evidence was easily disposable. Wimer, one of the officers executing the warrant, testified about his concern that drugs could be readily flushed down the toilet. The State thus claims that the facts known to the officers and reflected in the record led to a reasonable suspicion of exigency which justified a forcible entry. See *State v. Kelley*, 265 Neb. 563, 658 N.W.2d 279 (2003).

In the instant case, the search was commenced at approximately 10 minutes after 7 a.m. The Legislature has determined that for purposes of search warrants, the hours from 7 a.m. to 8 p.m. are considered "daytime." See Neb. Rev. Stat. § 29-814.04 (Reissue 1995). The evidence showed that the residence was a small house, and therefore a person could move reasonably quickly within the residence to attempt to destroy drug evidence. The testimony indicates that destruction of evidence was a concern of the police. We also note that the officers in this case made a second knock and announce prior to calling up the ram and received no response.

In connection with the execution of a warrant, whether or not exigent circumstances exist is subject to a reasonable suspicion analysis, *United States v. Banks*, 540 U.S. 31, 124 S. Ct. 521, 157 L. Ed. 2d 343 (2003), and the existence of reasonable suspicion is subject to a de novo review on appeal, *Kelley, supra.* Our

review of the record shows that the totality of the circumstances in this case supports a reasonable suspicion of exigency, namely the imminent destruction of drug evidence which justified a forcible entry, even absent a refusal of admittance. Under the facts of this case, the exigency developed subsequent to the knock and announce. The execution of the search warrant was not improper. The district court did not err in rejecting Lammers' claim regarding the execution of the search warrant. The district court did not err in denying Lammers' motion to suppress on this basis. We reject Lammers' second assignment of error.

## CONCLUSION

The affidavit in support of the search warrant established probable cause justifying its issuance, and the execution of the search warrant was not improper. We, therefore, conclude that the district court did not err in denying Lammers' motion to suppress and in admitting the evidence obtained from the search of Lammers' residence pursuant to the warrant. We therefore affirm Lammers' conviction.

AFFIRMED.

GERRARD, J., dissenting.

I agree with the majority's conclusion that the affidavit in this case was sufficient to establish probable cause to issue a search warrant. I also agree with the majority's exposition of the legal principles governing the court's "knock-and-announce" analysis, but I disagree with the conclusion that the majority reaches. This case does not involve a dispute about the historical facts; thus, as the majority notes, the ultimate determination of reasonable suspicion is reviewed de novo by this court. I would conclude, based on the circumstances presented here, that a reasonable suspicion of an exigent circumstance had not yet matured and that the district court should have sustained Lammers' motion to suppress the evidence obtained from the search of his residence. Thus, I respectfully dissent.

I begin by noting the reasoning with which the U.S. Supreme Court approved the reasonableness of the search conducted in *United States v. Banks*, 540 U.S. 31, 124 S. Ct. 521, 157 L. Ed. 2d 343 (2003). In *Banks*, as the majority notes, the court concluded it was reasonable to suspect an imminent loss of evidence 15 or 20

seconds after the police had knocked and announced their presence. The Court stated that on the record in that case,

> what matters is the opportunity to get rid of cocaine, which a prudent dealer will keep near a commode or kitchen sink. The significant circumstances include the arrival of the police during the day, when anyone inside would probably have been up and around, and the sufficiency of 15 to 20 seconds for getting to the bathroom or the kitchen to start flushing cocaine down the drain. That is, when circumstances are exigent because a pusher may be near the point of putting his drugs beyond reach, it is imminent disposal, not travel time to the entrance, that governs when the police may reasonably enter; since the bathroom and kitchen are usually in the interior of a dwelling, not the front hall, there is no reason generally to peg the travel time to the location of the door, and no reliable basis for giving the proprietor of a mansion a longer wait than the resident of a bungalow, or an apartment like Banks's. And 15 to 20 seconds does not seem an unrealistic guess about the time someone would need to get in a position to rid his quarters of cocaine.

540 U.S. at 40.

The Court's analysis in *Banks* must be read in light of the Court's earlier holdings in *Wilson v. Arkansas*, 514 U.S. 927, 115 S. Ct. 1914, 131 L. Ed. 2d 976 (1995), and *Richards v. Wisconsin*, 520 U.S. 385, 117 S. Ct. 1416, 137 L. Ed. 2d 615 (1997). In *Wilson*, the police officers executing the search warrant announced their presence at the same time that they entered the residence. The Court reversed the Arkansas Supreme Court's affirmance of the resulting conviction, explaining that the knock-and-announce principle formed a part of the Fourth Amendment inquiry into the reasonableness of a search. At the same time, the Court cautioned that the flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignored countervailing law enforcement interests. See *Wilson, supra.*

In *Richards, supra*, the Wisconsin Supreme Court had concluded that police were *never* required to knock and announce their presence when executing a search warrant in a felony drug investigation. The U.S. Supreme Court rejected the Wisconsin

court's conclusion that the Fourth Amendment permitted a per se exception in drug cases to what the Court now characterized as the "knock-and-announce requirement." 520 U.S. at 388. The Court held that in order to justify a no-knock entry, police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence. See *id.* But the Court refused to create a per se exception for felony drug investigations, stating that if it created such an exception, even for a category of offenses with a considerable risk of destruction of evidence, "the knock-and-announce element of the Fourth Amendment's reasonableness requirement would be meaningless." 520 U.S. at 394.

Obviously, under *Wilson, supra,* police cannot satisfy the knock-and-announce requirement by simultaneously announcing their presence and entering a residence, and *Richards, supra,* makes clear that the fact that drugs are easily disposable does not change the requirement of *Wilson.* But it is equally obvious that pursuant to *United States v. Banks,* 540 U.S. 31, 124 S. Ct. 521, 157 L. Ed. 2d 343 (2003), officers are permitted to force entry if they wait long enough, under the circumstances, to have a reasonable suspicion that waiting longer would permit the destruction of evidence. The instant case falls somewhere in the middle. The Court in *Banks* cautioned against distorting the "totality of the circumstances" principle by resorting to categorical schemes, and I recognize that the line in these cases can be difficult to draw. But, as Justice Holmes wrote, "the constant business of the law is to draw such lines." *Dominion Hotel v. Arizona,* 249 U.S. 265, 269, 39 S. Ct. 273, 63 L. Ed. 597 (1919).

In a rare concession, the Court stated in *Banks* that the "call," in that case, was "a close one." 540 U.S. at 38. This case, in my opinion, crosses the line, and the district court should have concluded that the search was unreasonable under the Fourth Amendment. In *Banks,* police entered the residence of a suspected drug dealer after 15 to 20 seconds. The Court specifically noted that the exigency of possible destruction of evidence was heightened because the "prudent dealer" will be prepared to quickly dispose of evidence. See 540 U.S. at 40.

In this case, on the other hand, police entered the residence after only 10 to 12 seconds, and had apparently determined to do so before they even reached Lammers' residence a few minutes after 7 a.m. The facts known to the police prior to executing the search warrant, as summarized in the majority opinion, do not particularly suggest that Lammers was a sophisticated drug dealer; the police did not seek a no-knock warrant. Rather, the record just as easily suggests that Lammers was certainly a consumer, and not a very prudent consumer at that. The fact that Lammers dropped his drugs at the bank indicates that he was not particularly cautious or discreet. I would conclude, considering the totality of the circumstances in this case, that the exigent circumstance claimed by the police—reasonable suspicion of the possible destruction of evidence—had not yet matured at the time that the police forced entry into Lammers' residence.

Nebraska law requires that in the absence of judicial direction, an officer executing a search warrant effectively give "notice of his office and purpose" before breaking into a building. See Neb. Rev. Stat. § 29-411 (Reissue 1995). Both the U.S. Constitution and § 29-411, however, permit the issuance of a no-knock search warrant when proof is presented that evidence may be easily disposed of or destroyed, or that danger to the executing officer may result. See *Richards v. Wisconsin*, 520 U.S. 385, 117 S. Ct. 1416, 137 L. Ed. 2d 615 (1997). While *Richards* cautioned against the overgeneralization associated with a per se rule permitting no-knock warrants in felony drug cases, the Court certainly did not preclude a no-knock search warrant when circumstances justify one. "[W]hen the officers know, before searching, of circumstances that they believe justify a no-knock entry, it seems more consistent with the Fourth Amendment to ask a neutral judge for approval before intruding upon a citizen's privacy." *U.S. v. Scroggins*, No. 03-2279, 2004 WL 574495 at *4 (8th Cir. Mar. 24, 2004). The majority's determination in this case, however, comes perilously close to permitting police to sidestep the procedure established by § 29-411 for obtaining a no-knock warrant. The police could obtain an ordinary search warrant, and then satisfy the knock-and-announce requirement with what is, in my opinion, a perfunctory announcement of their presence before a nearly immediate forced entry.

In order for *Wilson v. Arkansas*, 514 U.S. 927, 115 S. Ct. 1914, 131 L. Ed. 2d 976 (1995); *Richards, supra*; and § 29-411 to have continued vitality, the knock-and-announce requirement must be meaningfully implemented. I do not believe that, at 7:10 in the morning, waiting 10 to 12 seconds before breaking down Lammers' door was a meaningful announcement of police presence, and I conclude, after a de novo review, that the search was unreasonable under the Fourth Amendment. I would hold that the district court erred in denying Lammers' motion to suppress on that basis.

HENDRY, C.J., joins in this dissent.