#23713-r-RWS

**2006 SD 77**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

  v.

MICHAEL SWEEDLAND,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE TIMOTHY R. JOHNS
Judge

\* \* \* \*

LAWRENCE E. LONG
Attorney General

STEVEN R. BLAIR
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellee.


MATTHEW J. KINNEY
Kinney & Dardis, LLP
Spearfish, South Dakota                 Attorneys for defendant
                                        and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON FEBRUARY 13, 2006

OPINION FILED **08/16/06**

#23713

SABERS, Justice

[¶1.]     Michael Sweedland (Sweedland) appeals the circuit court's denial of his motion to suppress evidence obtained from the search of his vehicle.  We reverse.

**Facts**

[¶2.]     On the morning of February 13, 2005, Jay Pearson (Pearson) was cleaning one of the rooms in the Budget Host Jackpot Inn Motel in Deadwood, South Dakota.  During that time, Pearson smelled what he believed to be marijuana smoke emanating from two rooms across the hallway.  Pearson witnessed four young males, whom he believed to be the occupants of the rooms, leaving the motel. Pearson reported this information to law enforcement.

[¶3.]     The Pearson information was relayed over radio by police dispatch.  A summary by the dispatcher is as follows:

> Manager of the Budget Host advised four males just left the motel, headed into town, driving Montana License 29A8307, maroon 2000 4-door Oldsmobile.  The hallway smells like marijuana, as well as the two rooms they were staying in.

Officer Alex Hamann (Hamann), a Deadwood City Police Officer, was on duty that day and heard the dispatch.  Approximately three to five minutes after receiving the dispatch, Hamann identified a vehicle that matched the description given in the dispatch.  Sweedland was driving the vehicle.  Michael Huggins, Joseph Teasdale, and Jason Morrow were passengers in the Sweedland vehicle.[1]

---

1.     Hamann did not know the identities of the four individuals at this time, as that information was not provided by dispatch.

-1-

[¶4.] Hamann witnessed no traffic violations, but decided to stop the car to investigate the information relayed by dispatch. Sweedland pulled into a parking lot and stopped his vehicle upon seeing Hamann's emergency lights.[2] Hamann then approached the driver's side of the vehicle and asked Sweedland for his driver's license, proof of insurance, and vehicle registration. Sweedland provided the requested information and was asked to exit the vehicle and accompany Hamann to his patrol car.

[¶5.] Hamann performed a pat down of the outside of Sweedland's clothes before the two entered the patrol car. Nothing was found as a result of this search. Once the two had been seated in the car, Hamann began questioning Sweedland. Hamann first communicated the information that was received by dispatch and asked Sweedland why anyone would "say something like that." Sweedland replied that he "did not know." Hamann then asked Sweedland if he had any marijuana in his car, to which Sweedland answered in the negative. At this point, Hamann asked Sweedland for consent to search the vehicle. Sweedland asked Hamann what "grounds" he had to conduct the search. Hamann replied that he wanted to "follow through" with the complaint but that it was "up to [Sweedland]." Sweedland again refused to give consent stating that there were "no grounds" for a search and that he and his friends had not done anything unlawful. Hamann told Sweedland that he understood, but if Sweedland and his friends had truly done nothing illegal, there would be no reason to be concerned about a search. At this point, Sweedland

---

2.  The stop and the search were all captured on video and are part of the record for this appeal.

told Hamann that he was tired and wanted to "get going." Hamann then told Sweedland to remain in the patrol car. At no time during this encounter did Hamann witness any signs of impairment or behavior that enhanced his suspicions.[3]

[¶6.] Hamann exited the patrol car and approached the driver's side door of Sweedland's vehicle. He asked the three passengers to exit the vehicle via the passenger doors. After the passengers had complied, Hamann put his head inside the car via the driver's side window and looked at the interior of the vehicle. Before Hamann began questioning the three passengers, he turned off the outside microphone of his patrol car.[4] He obtained driver's licenses from each of the three passengers and returned to his patrol car to use the radio. The passengers remained standing to the right of the Sweedland vehicle.

[¶7.] None of the three passengers had outstanding warrants, but one had a suspended driver's license. Before Hamann could return the passengers' licenses,

---

3. By this time Cindy Rosche, a city ordinance officer, arrived at the scene to assist Hamann.

4. The initial stop and subsequent questioning of Sweedland are audio recorded because Hamann had the outside and inside microphones of his police car operating. As mentioned, Hamann turned off the outside microphone before questioning the passengers. No dialogue is available between Hamann and the passengers from this point forward. Nor are there any video images of the exchange between Hamann and the passengers because the patrol car is situated so that one can only see to the left of the vehicle. Hamann did leave the interior microphone on in his patrol car in an effort to record incriminating statements from Sweedland. The only audible statements by Sweedland can be heard after the search begins. They include an occasional curse and a rhetorical "why the f*** did we have to come to Deadwood?" Thus, the facts from this point forward are based on Hamann's testimony at the suppression hearing.

he was confronted by Officer Mertens (Mertens) who arrived to assist Hamann. Hamann told Mertens that he was unable to get Sweedland to consent to a search of the vehicle. Mertens suggested that they perform pat downs on the outer clothing of the three passengers. He did not mention any safety concerns justifying the pat down, and Hamann did not believe his safety was threatened at that time. At no time did Hamann witness any signs of impairment or other behavior on the part of the three passengers that would have increased his suspicions beyond that of the initial dispatch.

[¶8.] Hamann testified that upon returning to the three passengers, he inquired whether he could perform the pat downs. According to Hamann, the three acquiesced. One of the passengers, Joseph Teasdale, produced a pipe and some screens from his right coat pocket. The pipe and screens appeared to be brand new and did not contain any marijuana residue. Hamann then searched the area in the vehicle where Teasdale had been seated. Hamann found a wooden box containing marijuana residue. The officers proceeded with a search of the entire vehicle. A search of the vehicle's interior produced two to three bags of marijuana and eight to ten pieces of paraphernalia used to smoke marijuana. A search of the vehicle's trunk produced eleven bricks of marijuana.

[¶9.] Sweedland and the three passengers were arrested and charged with various drug related offenses. All four defendants made motions to suppress the evidence obtained as a result of the stop, search, and seizures. The motions were consolidated and a hearing was held on April 4, 2005.

[¶10.]     The circuit court issued a written decision denying the motions. The court held that the three passengers did not have standing to challenge the search as they had no legitimate expectation of privacy in Sweedland's vehicle. As to the passenger pat downs, the court found that "there were no specific, reasonable observations by the officer which would support a conclusion that any of the defendants were armed and dangerous." In addition, the court noted, "there is no evidence that any of the defendants knowingly and intelligently consented to a search of their persons." The court also found that nothing transpired between the stop and the search that "serve[d] as circumstantial evidence corroborating the report from the motel." However, the court denied Sweedland's motion, writing:

> [U]nder the totality of the circumstances test the officer was able to verify the report of the informant, shortly after it was made, in respect to the description, state of registration, and license number of the motor vehicle as well as its direction of travel and the number and sex of occupants. Ergo, I conclude as a matter of law that the officer had probable cause that either the vehicle and/or its occupants possessed contraband and that he was legally entitled to conduct a warrantless search of the vehicle and its occupants under the automobile exception to the search warrant requirements of the Fourth Amendment to the United States Constitution and Articles VI, § 11 of the South Dakota State Constitution.

[¶11.]     The passengers were tried and convicted of drug related offenses. They did not appeal. Sweedland was convicted of violating SDCL 22-42-7 and 22-3-3, which prohibit the possession of more than one pound of marijuana with the intent to distribute. He raises the following issue on appeal:

Whether there was sufficient corroboration of the informer's tip to permit a warrantless search of Sweedland's vehicle.[5]

## Standard of Review

[¶12.]     Our standard of review is well settled:

A motion to suppress based on an alleged violation of a constitutionally protected right is a question of law reviewed de novo. We review findings of fact under the clearly erroneous standard. Once the facts have been determined, however, the application of a legal standard to those facts is a question of law reviewed de novo.

State v. Chavez, 2003 SD 93, ¶13, 668 NW2d 89, 95 (quoting State v. Hodges, 2001 SD 93, ¶8, 631 NW2d 206, 209 (internal citations omitted).

## Decision

[¶13.]     The Fourth Amendment of the United States Constitution and Article VI, Section 11 of the South Dakota Constitution protect individuals from unreasonable searches and seizures.[6]  "As a rule, this protection has been interpreted as holding 'a seizure of personal property . . . per se unreasonable . . . unless it is accomplished pursuant to a judicial warrant issued upon probable cause[.]'"  State v. Ballard, 2000 SD 134, ¶10, 617 NW2d 837, 840 (quoting United States v. Place, 462 US 696, 701, 103 SCt 2637, 2641, 77 LEd2d 110 (1983)).  The

---

5.     Sweedland does not challenge whether there was reasonable suspicion for Hamann to stop his vehicle.

6.     The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

warrant requirement is not without exceptions. Specifically, the automobile exception excuses law enforcement from obtaining a warrant when the officer has probable cause to search the vehicle. *Id*. n2 (citing Wayne R. LaFave, Search and Seizure § 7.1(a) at 433 (3d ed 1995)).

[¶14.] Because the Fourth Amendment has a "strong preference" for searches conducted pursuant to a warrant, law enforcement is afforded no deference when relying on an exception to justify a warrantless intrusion. State v. Raveydts, 2004 SD 134, ¶8, 691 NW2d 290, 293; State v. Luxem, 324 NW2d 273, 279 (SD 1982). When the state is relying on an exception to the warrant requirement, its burden is as follows:

> Under the Fourth Amendment of the United States Constitution and Art. VI, § 11 of the South Dakota Constitution a warrantless search and seizure is *per se* unreasonable unless it falls within one of the jealously and carefully drawn, strictly circumscribed exceptions to the warrant requirement. A heavy burden is on the State to prove such exception.

*Luxem*, 324 NW2d at 279 (citing Arkansas v. Sanders, 442 US 753, 99 SCt 2586, 61 LEd2d 235 (1979)) (internal quotations omitted).

[¶15.] As mentioned above, the circuit court ruled that Hamann had probable cause to search Sweedland's vehicle at the time Hamann made the stop. The court based its ruling on Hamann corroborating the vehicle description, direction of travel, license plate number, and the number and gender of the occupants with the tip received by dispatch. We have had several occasions to examine whether a tip provides reasonable suspicion for police to stop a vehicle. *See* State v. Cuny, 534 NW2d 52, 54 (SD 1995) (explaining a number of cases where the issue turned on whether an anonymous tip by a private citizen provided reasonable suspicion for a

stop); State v. Scholl, 2004 SD 85, ¶7, 684 NW2d 83, 86 (listing numerous cases involving vehicle stops based upon informant tips). In *Scholl*, we explained:

> An informant's tip may carry sufficient indicia of reliability to justify a [vehicle] stop even though it fails to rise to the level of the probable cause needed for an arrest or search warrant. All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity.

*Id.* ¶6 (citing State v. Olhausen, 1998 SD 120, ¶7, 587 NW2d 715, 717-718) (internal quotations omitted). Ultimately, we held that reasonable suspicion to effectuate a stop occurred when a tip conveyed the make, model, license number, and location of Scholl's vehicle, as well as the fact that Scholl had stumbled badly out of a bar and had difficulty entering his vehicle. *Scholl,* 2004 SD 85, ¶17, 684 NW2d at 89.

[¶16.] In *Graf v. Dept. of Commerce & Regulation*, we held that an anonymous tip was insufficient to provide reasonable suspicion for a vehicle stop. 508 NW2d 1, 3-4 (SD 1995). The tip provided the make, model, and license plate number of Graf's vehicle, along with a statement that Graf was possibly intoxicated. *Id*. The officer who stopped Graf did not witness any erratic driving. It was due to the vague nature of the tip and the officer's failure to corroborate additional facts beyond the make and license plate number of the vehicle that the majority held the tip insufficient to provide reasonable suspicion. *Id*.

[¶17.] The United States Supreme Court addressed this issue in *Alabama v. White,* 496 US 325, 110 SCt 2412, 110 LE2d 301 (1990). In *White*, the police received an anonymous telephone tip that White would be leaving her apartment at a particular time in a particular car and that she would be in possession of cocaine. 496 US 325 at 327, 110 SCt at 2414, 110 LEd2d 301. The tip also specified White's

destination, the amount of cocaine she would be carrying, and the type of bag she would be using to conceal the cocaine. *Id.* Law enforcement corroborated most of that information. 496 US at 331, 110 SCt at 2417, 110 LEd2d 301. The Court held that although it was a "close case," the tip provided law enforcement with reasonable suspicion to stop White's vehicle. 496 US at 332, 110 SCt at 2417, 110 LEd2d 301. The Court also noted that:

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

496 US at 330, 110 SCt at 2416, 110 LEd2d 301.

[¶18.] The question here is not whether the tip and corroboration that followed constituted reasonable suspicion to stop Sweedland's vehicle, but whether it created probable cause to conduct a search of the vehicle.[7] Although the above mentioned cases aid our analysis, the state faces a greater burden in the present case.

[¶19.] In *Raveydts*, we held that two anonymous tips alleging illegal drug activity in an apartment were sufficient to provide probable cause to obtain a search warrant. 2004 SD 134, 691 NW2d 290. The tips provided information that the defendant was a narcotics user and that she continually had people coming and going from her apartment. The tip also mentioned that the visitors were narcotics

---

7. We note that the tip was not anonymous. Although it is not clear if Pearson gave his name to dispatch, he did give his job title and place of employment.

users and that the tipster had witnessed an individual exit the apartment in possession of narcotics. *Id.*¶10. One of the informants lived below the defendant and alleged smelling marijuana smoke. *Id.* ¶3. Finally, the informants provided license plate numbers of some of the individuals who had been frequenting the apartment. *Id.*

[¶20.]        Law enforcement identified the owners of the license plate numbers supplied by the callers. *Id.* ¶4. Several of the individuals had been involved in drug violations and one had been involved in large marijuana sales throughout the area. *Id.* Based on that corroboration and information, a circuit judge issued a search warrant for the defendant's apartment. *Id.* ¶5. In holding that there was probable cause to issue the search warrant, the majority placed emphasis on the fact that a magistrate had made the probable cause determination. *Id.* ¶7. The concurrence agreed, noting, "far more constitutional violations are likely to come from intrusions into homes and vehicles by officers without search warrants, under claimed exceptions to the search warrant requirement[.]" *Id.* ¶19 (Sabers, J., concurring).

[¶21.]        The inquiry into probable cause is whether the "information provided to the judge was sufficient for a common sense decision that there was a fair probability the evidence would be found on the person or at the place to be searched." *Id.* ¶7 (citing Illinois v. Gates, 462 US 213, 238, 103 SCt 2317, 2332, 76 LE2d 527 (1983)). Two elements were labeled as "crucial" in determining whether an anonymous informant's tip provided a substantial basis for the issuing court's finding of probable cause. *Id.* ¶11. "First, an explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first hand,

entitles the informant's tip to greater weight than might otherwise be the case." *Id*. (citing *Gates*, 462 US at 234, 103 SCt at 2330, 76 LEd2d 527) (internal quotations omitted). "Second, the extent to which the tip is corroborated by the officer's own investigation is important." *Id*. ¶12. In *Gates*, the United States Supreme Court outlined many of its prior decisions concerning whether tips are sufficient to provide probable cause. 462 US 213, 241-42, 103 SCt 2317, 2334, 76 LEd2d 527. The Court summarized the cases, stating:

> [o]ur decisions applying the totality-of-the-circumstances
> analysis . . . have consistently recognized the value of
> corroboration of details of an informant's tip
> by independent police work.

*Id*. at 241.

[¶22.]     Before these principles are applied, it is important to note that Hamann did not receive a warrant to search Sweedland's vehicle. The State is relying on one of the exceptions to the warrant requirement. Thus, we will apply a heavy burden to the State's assertion. As stated by the United States Supreme Court:

> The essential protection of the warrant requirement of the
> Fourth Amendment, as stated in *Johnson v. United States,* 333
> US 10, 68 SCt 367, 92 LEd 436 (1948), is in requiring that the
> usual inferences which reasonable men draw from evidence be
> drawn by a neutral and detached magistrate instead of being
> judged by the officer engaged in the often competitive enterprise
> of ferreting out crime.

*Gates*, 462 US at 240, 103 SCt at 2333, 76 LEd2d 527 (internal quotations omitted).

[¶23.]     The record reflects that neither of the two crucial elements was met by the informant's tip. First, the informant did not observe any wrongdoing on the part of the four men. He did not see them using drugs. Nor did he see them in

possession of drugs or paraphernalia. The lack of first hand observance is inextricably intertwined with the informant's failure to give an explicit and detailed account of the event. The only thing the informant conveyed to dispatch was that he had smelled marijuana smoke in the hallway and that the two rooms the men had occupied smelled of marijuana. This does not constitute an explicit and detailed account of the event.

[¶24.] The only thing Hamann corroborated at the time of the stop was the license plate number, direction of travel, and gender of the four occupants. He did not witness any erratic driving. Nor did he ascertain whether the men had stayed at the motel, what rooms if any, they had occupied, who had been occupying the adjacent rooms, and whether the men showed any signs of impairment or smelled of marijuana smoke. Thus, at the time of the stop, Hamann had corroborated only innocuous facts. The information provided coupled with the corroboration of Hamann falls short of the standard set forth in *Raveydts* and did not amount to a "fair probability evidence would be found [on the four men] or in [Sweedland's vehicle]." 2004 SD 134, ¶7, 691 NW2d 290 at 293 (citing *Gates,* 462 US at 238, 103 SCt at 2332, 76 LEd2d 527). As a result, the circuit court erred in holding the tip, standing alone, provided probable cause to search the vehicle at the time of the stop.

[¶25.] At most, Hamann had reasonable suspicion to stop Sweedland's vehicle and investigate the informant's claim as provided in *Scholl*, *White*, and *Cuny*. The informant's tip alleged marijuana use, a class one misdemeanor under SDCL 22-42-15. The tip did not allege the four men were engaged in drug trafficking. A

reasonable police officer might conclude that one who had been using marijuana shortly before a stop might also possess marijuana. However, Hamann could not infer possession without first corroborating the allegation of marijuana use.

[¶26.] The information given to dispatch was that marijuana smoke could be smelled in the rooms and in the hallway. Hamann stopped Sweedland's vehicle within three to five minutes after the dispatch. However, Hamann did not smell marijuana in Sweedland's vehicle or on any of the individuals. He testified that none of the four men exhibited any signs of impairment and, as a result, he did not conduct any sobriety tests. Additionally, Hamann provided no testimony that any of the four men acted nervous or in a manner that enhanced his suspicions. Because Hamann's investigation failed to corroborate the informant's allegations, Hamann did not have probable cause to search the vehicle and Sweedland should have been free to leave.[8]

[¶27.] We agree with the circuit court that nothing after the stop served as circumstantial evidence corroborating the report from the motel. However, the court erred in holding that probable cause existed at the time of the initial stop. Sweedland's motion to suppress should have been granted.

[¶28.] Reversed.

[¶29.] MEIERHENRY, Justice, concurs.

[¶30.] KONENKAMP, and ZINTER, Justices, concur in result.

---

8. Hamann's subjective motives do not control the issue of probable cause. However, the record is clear that Hamann knew he did not have probable cause because he repeatedly asked Sweedland for consent to conduct a search. Moreover, Hamann did not pat down the three passengers for safety reasons, but as a result of Sweedland's refusal to consent.

#23713

[¶31.]     GILBERTSON, Chief Justice dissents.


KONENKAMP, Justice (concurring in result).

[¶32.]     Is a telephone call from a citizen reporting that someone was in an area that smelled of marijuana sufficient in itself to authorize the police to stop and search that person's car? In this case, the caller, a motel manager, reported that "the hallway [the suspects were in] smells of marijuana, as well as the two rooms that they were staying in." Other than confirming that the caller accurately identified the suspects and their car, the police were unable to establish that the caller had any expertise or experience in identifying the odor of marijuana, and, after stopping the car, the police could not corroborate that these suspects possessed or even smelled of marijuana. Nonetheless, the police went ahead and searched the car. To explain why this search is unconstitutional, three points need to be made.

### 1. Reasonable Suspicion and Probable Cause.

[¶33.]     Merely because an expectation of privacy may be lower in an automobile does not mean that automobiles can be searched with something less than probable cause. Although exigent circumstances can justify searching a car without a warrant, there is no different or lesser standard for automobiles: probable cause remains the same whether it is used to justify a search with or without a warrant. Indeed, when an officer conducts an automobile search without a warrant, that officer "acts unlawfully and at his peril unless he can show the court probable cause." Carroll v. United States, 267 US 132, 156, 45 SCt 280, 286, 69 LEd 543 (1925). After Officer Hamann received the dispatcher's message about the

-14-

call, he was able to verify the physical description of the vehicle, the license plate number, the direction of travel, and the number and sex of the occupants. With this information, Officer Hamann had *reasonable suspicion* to conduct an investigatory stop of Sweedland's car.[9] State v. Scholl, 2004 SD 85, ¶12, 684 NW2d 83, 88. Nonetheless, although informant tips may carry sufficient weight to constitute reasonable suspicion for an investigatory stop, reasonable suspicion is not the same as probable cause necessary to conduct a search. Alabama v. White, 496 US 325, 330, 110 SCt 2412, 110 LEd2d 301 (1990); State v. Herrmann, 2002 SD 119, ¶10, 652 NW2d 725, 728. To justify a warrantless search of an automobile, there must be "probable cause to believe that the car contains articles that the officers are entitled to seize." Chambers v. Maroney, 339 US 42, 48, 90 SCt 1975, 1979, 26 LEd2d 419 (1970).

## 2. Citizen's Tip plus Police Corroboration.

[¶34.]        When a citizen informant reports to police that a crime has been committed, that "informant's 'veracity,' 'reliability' and 'basis of knowledge' are all highly relevant in determining the value of his report." Illinois v. Gates, 462 US 213, 230, 103 SCt 2317, 2328, 76 LEd2d 527 (1983). These elements should not "be understood as entirely separate and independent requirements to be rigidly exacted in every case." *Id.* Instead, a probable cause determination always depends on an examination of the totality of the relevant circumstances. *Id.* at 235, 103 SCt at

---

9.      Whether this call gave sufficient information to justify reasonable suspicion for an investigatory stop is apparently conceded.

2330, 76 LEd2d 527; *see also* State v. Christensen, 2003 SD 64, ¶23, 663 NW2d 691, 697 (quoting State v. Zachodni, 466 NW2d 624, 629 (SD 1991)).

[¶35.]     Officer Hamann received a radio message that the manager of the Budget Host advised that the "four [suspects] just left the motel, headed into town, driving a Montana Lic/29A8307, Maroon 2000 Olds 4DR." After stopping the vehicle and confirming the caller's information about the identity of the car and its occupants, Officer Hamann found no additional facts to suggest that the occupants were involved in criminal activity.

[¶36.]     In our prior cases dealing with citizen tips on criminal conduct, we have upheld automobile stops and searches when officers were able to corroborate to some degree that the persons stopped were indeed involved in some type of criminal behavior. *Scholl*, 2004 SD 85, ¶6, 684 NW2d at 86; State v. Olhausen, 1998 SD 120, ¶7, 587 NW2d 715, 717-18 (citations omitted). That is what makes this case different. Here, the police gained nothing from the investigatory stop to elevate reasonable suspicion to the level of probable cause. Mere suspicion is never sufficient to support a finding of probable cause. Wong Sun v. United States, 371 US 471, 83 SCt 407, 9 LEd2d 441 (1963). Other courts have likewise noted the importance of independent corroboration. *See* State v. K.V., 821 So2d 1127, 1128 (Fla 2002) (information from security guard provided suspicion; probable cause was established after officer corroborated that information "when he observed a 'small cloud' of smoke floating from the vehicle and smelled the odor of burning marijuana"); State v. Estrado, 318 SE2d 505, 507 (GACtApp 1984) (information officer received was insufficient to detain defendants, but officer smelling marijuana

provided the corroboration necessary for probable cause); State v. Brikenmeier, 888 A2d 1283, 1290 (NJ 2006) (the officer's observations and smell of marijuana during the investigatory stop based on informant's tip "further corroborated" the tip and "triggered application of the automobile exception to the warrant requirement"). *But see* State v. Carlson, 762 NE2d 121 (Ind 2002) (anonymous tip resulted in stop of vehicle, officer smelled alcohol and marijuana emitting from vehicle, smell not sufficient to establish probable cause).

[¶37.] In some instances, crime reporting by citizen informants having firsthand knowledge may be sufficient for probable cause without police corroboration. *State v. Griggs*, 34 P3d 101, 104 (Mont 2001) (when information is provided by citizen informant, "whose identity is known, who personally observes the alleged criminal activity . . . may not need further law enforcement corroboration"); *State v. Lammers*, 676 NW2d 716, 725 (Neb 2004) ("detailed eyewitness report of a crime may be self-corroborating"). However, a citizen informant's veracity and basis of knowledge remain important considerations for finding probable cause, when an independent investigation by law enforcement officers fails to substantiate allegations of criminal activity. *See Gates*, 462 US at 238-39, 103 SCt at 2328, 76 LEd2d 527 (there needs to be a "substantial basis . . . for concluding that probable cause existed") (quoting Jones v. United States, 362 US 257, 271, 80 SCt 725, 736, 4 LEd2d 697 (1960)). In this case, we have no police corroboration of the purported criminal activity. Thus, we must examine whether there was an adequate basis of knowledge to support the citizen's tip.

### 3.  Basis of Knowledge for Citizen's Report.

[¶38.]      Without corroboration, all the police had to go on was what the caller had relayed.  Nonetheless, we will give greater weight to a citizen's "explicit and detailed description of alleged wrongdoing," and "a statement that the event was observed firsthand. . . ." *Gates,* 462 US at 234, 103 SCt at 2330, 76 LEd2d 527.  But here there was no explicit and detailed description of wrongdoing.  In fact, the caller did not claim to have seen any marijuana or anyone using marijuana.  He claimed only to have smelled marijuana.

[¶39.]      In cases where informants have reported on the smell of marijuana, the courts have found relevant a showing of training or experience with the substance before such reports can be considered reliable for probable cause purposes.[10]  Not every citizen calling to report the smell of marijuana can be

---

10.      Professor LaFave explains the importance of the basis of knowledge element in assessing probable cause:

> [T]he case which clearly calls for some explanation regarding the basis of knowledge of the victim or witness is that in which it appears the purported knowledge could have been obtained only by the utilization of some expertise beyond that of the typical layman.  Though such an explanation is sometimes needed in other contexts, the usual situation is that in which the person providing the information asserts that he has detected illegal drugs or narcotics of a certain type at a certain place, in which case some showing must be made that this person has the ability to recognize that substance through the senses he employed.

Wayne R. LaFave, 2 Search and Seizure:  A Treatise on the Fourth Amendment § 3.4 (4th ed) (citations omitted).

considered presumptively reliable.[11]  A good illustration of this principle can be

seen in *State v. Swift,* 556 NW2d 243 (Neb 1996).  There, a social worker visiting

the apartment of a client noticed the smell of burnt marijuana and saw what she

believed to be marijuana seeds.  The affidavit for a search warrant recited the basis

for the social worker's knowledge:  "because of the nature of her job, she was

familiar with the smell and appearance of marijuana."  Thus, because the social

worker had observed a crime and had sufficient knowledge of the smell and

appearance of marijuana, the Supreme Court of Nebraska ruled that she was

"presumptively reliable."  *Id.* at 248.  Other courts have held similarly.[12]

[¶40.]        In this case, the caller's report of a crime was an opinion.  The caller

did not claim to have personally observed marijuana or to have seen anyone using

---

11.    Despite its claim that a "split of authority" exists on the issue of "how an
       informant knows the odor . . . of marijuana," the dissent fails to cite even one
       case holding that a report from a citizen informant on the smell of marijuana
       is sufficient of itself to authorize police to conduct a warrantless search of
       private property, absent any indication that the citizen informant had
       training or experience in detecting the odor of marijuana.  And cases the
       dissent cites for its argument contradict its position.  *See, e.g.*, United States
       v. Merryman, 630 F2d 780, 784 (10thCir 1980) ("This Circuit has held that
       the smelling of marijuana by an *experienced observer* furnishes probable
       cause for the search.") (Emphasis added).

12.    People v. Schulle, 124 CalRptr 585 (1975) (14-year-old girl who stated that
       she was familiar with marijuana told police officer that she had seen
       marijuana in her stepfather's bedroom); People v. Paris, 122 CalRptr 272
       (1975) (a reserve police officer trained to recognize the substance who
       personally witnessed the alleged criminal activity is a presumptively reliable
       informant); State v. Mordowanec, 788 A2d 48 (Conn 2002) (court examined
       informant's basis of knowledge and veracity, as well as  information provided
       in tip, witness "detected a strong odor of marijuana, claiming that he 'knows
       marijuana citing the fact that he is a "Vietnam vet"'"); State v. Doyle, 291
       NW2d 545 (Wis 1980) (citizen personally observed the alleged criminal
       activity and explained he recognized marijuana because he had seen it in
       service in Vietnam).

marijuana. Nor did he describe what he smelled. Was it smoke? Was it dried marijuana? Was it raw plant material? From whatever he smelled, however, the caller deduced that it was marijuana. While citizen informants are presumed to be truthful, they are not presumed to be experts necessarily qualified to render opinions the same as trained law enforcement officers. Nothing in the caller's information established his competence in knowing the smell of marijuana. This point was noted in *United States v. DeLeon*: "[w]e hold that a warrant cannot be based on the claim of an untrained or inexperienced person to have smelled growing plants which have no commonly recognized odor." 979 F2d 761 (9thCir 1992) (affiant not *qualified* to recognize the odor of growing marijuana) (citation omitted). On the other hand, the case of *State v. Kuhlman*, 2005 WL 1502284 (WashApp 2005), illustrates the principle in the inverse: "a layperson [citizen informant] who has personal experience with the odor of burning or growing marijuana may likewise identify burning or growing marijuana by smell."

[¶41.] In circuit court, Officer Hamann was asked, "Do you know what training and experience [the manager] would have in detecting marijuana?" The officer answered, "No, I do not." Thus, in addition to not receiving information on the caller's basis of knowledge, Officer Hamann had no other information about the caller's expertise. While a police officer's smell of marijuana has regularly satisfied the probable cause requirement, Officer Hamann did not personally smell anything that would warrant searching the vehicle. *See* State v. Peterson, 407 NW2d 221, 223 (SD 1987) ("detection of odors alone, which trained police officers can identify as

being illicit, constitutes probable cause to conduct a warrantless search of an automobile") (citations omitted); State v. Hanson, 1999 SD 9, ¶14, 588 NW2d 885, 890 ("[o]nce [the officer] detected the odor of burnt marijuana and the drug dog 'hit' on the car, there was probable cause for a warrantless search of the car") (citations omitted).

[¶42.]     Had the police gained information to corroborate the existence of criminal activity, the deficiency in the caller's basis of knowledge may have been overcome under the totality of relevant circumstances. *See Gates*, 462 US at 233, 103 SCt at 2329, 76 LEd2d 527 ("a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability") (citations omitted).  Or, the difficulty may have perhaps been surmounted if the officer had radioed the dispatcher to call the manager back and get more details about what he smelled and how he knew it was marijuana.  But, in the absence of any further information, the police only had a reasonable suspicion, but no probable cause.

[¶43.]     Lastly, the State argues that the police had probable cause based on the pipes turned over to them during the pat down search.  It is important to look at the sequence of events.  Sweedland was stopped and taken back to the patrol car.  He was questioned.  He refused to consent to a search of the car.  A background check was run.  He was detained in the patrol car.  Then the police spoke to each of the passengers, asked them to exit the vehicle, obtained their licenses or identification documents, and ran a background check on them.  One passenger's driver's license was suspended.  After this, the officers searched the passengers.

However, by the time the officers had everyone get out of the car for the pat down search, there were no further grounds to detain them because the caller's allegations were not substantiated.[13] State v. Ballard, 2000 SD 134, ¶13, 617 NW2d 837, 841. The circuit court specifically found that the State failed in its burden to prove that the passengers voluntarily consented to be pat searched. That issue has not been appealed. Individuals "may not be detained even momentarily without reasonable, objective grounds for doing so[.]" Florida v. Royer, 460 US 491, 498, 103 SCt 1319, 1325, 75 LEd2d 229 (1983). Whatever objective grounds existed to stop Sweedland's car, those grounds were exhausted after the police could not substantiate the caller's allegations.

### 4. Conclusion.

[¶44.]    Public-spirited citizens interested in seeing the law upheld should be encouraged to report suspicious circumstances to the police. Conscientious law enforcement officers will thereafter investigate such reports. But before officers can conduct a full-blown search of someone's private property, they must have more than a citizen caller's uninformed "opinion" that a crime has been committed. The police here could not rely solely on the caller's information to conduct a search of the car because there was no basis to believe the caller had any experience or training in detecting the odor of marijuana.

[¶45.]    When law enforcement searches are founded on information falling short of probable cause, it is our duty to uphold the Fourth Amendment along with its corresponding provision in our South Dakota Constitution. US Const amend IV;

---

13.    Defense counsel timely raised this issue in the suppression hearing.

SD Const art VI, § 11.  Because the search here was conducted without probable cause, it is unconstitutional and cannot stand.

[¶46.]     For these reasons, I concur in the result.

[¶47.]     ZINTER, Justice, joins this special writing.


GILBERTSON, Chief Justice (dissenting).

[¶48.]     I respectfully dissent.  I agree with the Court that Hamann needed to have probable cause in order to search Sweedland's vehicle.  However, the tip from the hotel manager, a concerned citizen rather than an anonymous tipster, provided reliable and credible information that was sufficiently corroborated by Hamann such that the probable cause requirement was satisfied.

[¶49.]     The only facts pertinent to the holding in this case are those that were known to Hamann at the time of the traffic stop.  Therefore, I restate those facts below.

[¶50.]     On February 13, 2005, at approximately 10:45 a.m., Hamann received a radio call from a Lawrence County dispatcher advising him as follows:  "The manager of the Budget Host advised that four males just left the motel, headed into town, driving Montana Lic/29A8307, Maroon 2000 Olds 4DR.  The hallway smells of marijuana, as well as the two rooms that they were staying in.  (Room 23 and Room 24)."[14]

---

14.    The text is a transcript of the radio dispatch, which was entered into evidence at the suppression hearing.

[¶51.]     Over the next six minutes the following transmissions between dispatch and Rische were overheard by Hamann:  "Suspects are at Pack Horse[, a local convenience store]," followed by "Just left Pack Horse, headed towards the courthouse," "Just headed out of town, headed towards Boulder Canyon," and finally "They are just ahead of me."

[¶52.]     At approximately 10:53 a.m., Hamann advised dispatch he had stopped Sweedland's car.  Hamann would later testify that he witnessed no traffic violations, but decided to stop the car to further investigate the information relayed by dispatch.  The stop was recorded on Hamann's patrol car video.

[¶53.]     Hamann exited his vehicle, approached the driver's side of Sweedland's vehicle and asked for his driver's license, proof of insurance and vehicle registration. Sweedland provided the requested documents and Hamann asked him to accompany him to his patrol car.  Hamann then performed a pat down search of Sweedland prior to him entering the patrol vehicle.  Nothing was found during the pat down search.

[¶54.]     Once in the patrol vehicle, Hamann engaged Sweedland in conversation as to the reason for the stop, telling him of the information received by dispatch from the Budget Host.  Hamann asked Sweedland for consent to search his vehicle, which Sweedland declined by asking what "grounds" he had to conduct the search.  Hamann replied that he wanted to "follow through" on the complaint but that it was up to Sweedland.  Sweedland again declined stating that there were "no grounds" for a search.  After a second request, Sweedland again declined telling

Hamann he was tired and wanted "to get going." Hamann then told Sweedland to remain in the patrol car.

[¶55.] At 11:00 a.m., Hamann exited the patrol car and approached the driver's side door of Sweedland's vehicle. He asked the three passengers to exit the vehicle on the passenger side doors. After they complied, Hamann looked through the driver's side window into the interior of the vehicle; his face broke the plane of the window as he appeared to smell and look at the interior of the car. He then turned off the outside microphone of his patrol car.

[¶56.] The events that transpired after the outside microphone was turned off cannot be heard. Nor can the passengers be seen during the remainder of the videotape due to the angle at which Hamann parked his patrol car. All of the facts concerning the remainder of the stop were testified to by Hamann at the suppression hearing or contained in a transcription of the transmissions between the various officers involved and dispatch that was admitted into evidence.

[¶57.] Hamann testified that he asked the passengers for their identification in order to run a check. Hamann then returned to his patrol vehicle and transmitted the information to dispatch. The videotape shows that Hamann then exited his vehicle and spoke with the officers on the scene, including Officer Mertens who had arrived on the scene to assist sometime before Hamann finished transmitting the driver's license information to dispatch.

[¶58.] Hamann testified that he told Officer Mertens that he was unable to get consent for a search of the vehicle. Hamann then testified that Mertens suggested they perform pat downs on the outer clothing of the three passengers, but

that he did not recall Mertens mentioning any safety concerns. Hamann further testified that he did not have any particularized suspicion that the passengers presented a safety threat during the stop.

[¶59.] After he asked the passengers if he could search them, Hamann testified the passengers replied "it was okay." Hamann did not remember in what order the three passengers were searched, but he did recall Teasdale was searched first and that he knew at the time he searched Teasdale that the Montana driver's license he gave Hamann was suspended. [15] However, before Hamann began the pat down search of Teasdale, Teasdale produced two pipes and some screens from his right coat pocket. Neither of the pipes had been used and did not contain marijuana residue.

[¶60.] After being handed the pipes and screens, Hamann searched the area of the car in which Teasdale had been seated and his wingspan area. The search produced a wooden box with marijuana residue in it. Hamann testified that the officers expanded the search to the entire vehicle and found eight to ten pieces of drug paraphernalia and two to three bags of marijuana in the center console and the glove box. Finally, Hamann testified that eleven bricks of marijuana were found in a backpack located in the trunk of the car.

---

15. SDCL 32-12-67 provides: "It is a Class 1 misdemeanor for any person to display or cause or permit to be displayed or have in that person's possession any canceled, revoked, suspended, fictitious, or fraudulently altered driver license." A Class 1 misdemeanor is punishable by up to "one year imprisonment in a county jail or one thousand dollars fine, or both[.]" SDCL 22-6-2(1) (effective through July 1, 2006).

[¶61.] Hamann would later testify at the suppression hearing that he witnessed no signs of intoxication or impairment when he spoke with Sweedland and his passengers. He also testified that none of the four men had any of the classic signs of recent marijuana ingestion such as red eyes. Nor did Hamann detect the odor of marijuana in the car or on the clothing of the four men.

## ANALYSIS

[¶62.] An officer may conduct a warrantless search of an automobile under the "automobile exception" to the Fourth Amendment warrant requirement once probable cause to conduct the search is clear. Pennsylvania v. Labron, 518 US 938, 940, 116 SCt 2485, 2487, 135 LEd2d 1031 (1996) (citing California v. Carney, 471 US 386, 390-91, 105 SCt 2066, 2068-2069, 85 LEd2d 406 (1985); Carroll v. United States, 267 US 132, 45 SCt 280, 69 LEd 543 (1925)). The rationale for the "automobile exception" rests upon the "ready mobility" of an automobile, which in and of itself is an exigency sufficient to excuse the failure to obtain a search warrant once probable cause to conduct a search is clearly established. *Id.* An individual's reduced expectation of privacy in an automobile also provides further justification for the "automobile exception." *Id.* (citing *Carney*, 471 US at 391-92, 105 SCt at 2069-2070, 85 LEd2d 406 (noting that the highly regulated nature of automobiles makes it subject to a lesser expectation of privacy)). Probable cause to conduct a warrantless search under the "automobile exception" requires that the officer involved "believe that an automobile which he has stopped contains contraband or evidence of a crime." State v. Peterson, 407 NW2d 221, 226 (SD 1987) (citing Chambers v. Maroney, 399 US 42, 90 SCt 1975, 26 LEd2d 419 (1970); Carroll v.

United States, 267 US 132, 45 SCt 280, 69 LEd 543 (1925); State v. Burkman, 281 NW2d 436 (SD 1979)).

[¶63.] The facts and circumstances supporting a determination of probable cause may be based on hearsay from an informant. State v. Raveydts, 2004 SD 134, 691 NW2d 290. However, just as a magistrate considers the "veracity" or "reliability" and "basis of knowledge" of the person or persons supplying the hearsay information, *Illinois v. Gates,* 462 US 213, 238-39, 103 SCt 2317, 2332, 76 LEd2d 527 (1983) (quoting *Jones v. United States, supra,* 362 US 257, 271, 80 SCt 725, 736, 4 LEd2d 697 (1960)), so must an officer when evaluating the facts and circumstances in a probable cause determination.

*Basis of Knowledge*

[¶64.] It is not possible to understand the concepts of "reliability" or "veracity," and "basis of knowledge" in a probable cause inquiry without resorting to the now-abandoned two-prong *Aguilar-Spinelli* test and the authority upon which it relied. The purpose of satisfying the "veracity" or "reliability" prong and the "basis of knowledge" prong under *Aguilar-Spinelli* was to ensure that an informant's tip was not the product of rumor or based on a suspect's general reputation. *Gates*, 462 US at 228 n3, 103 SCt at 2327 n3, 76 LEd2d 527 (quoting Spinelli v. United States, 393 US 410, 416, 89 SCt 584, 589, 21 LEd2d 637 (1969)). Both prongs under *Aguilar-Spinelli* had to be independently satisfied prior to the Supreme Court's holding in *Gates*, which ushered in the more relaxed "totality of the circumstances" standard. *Id*. at 230, 103 SCt at 2328, 76 LEd2d 527.

[¶65.]     As such, an affidavit in support of a search warrant, or an officer conducting a warrantless search, had to show knowledge of "facts sufficiently establishing either the 'veracity' of the affiant's informant, or, alternatively, the 'reliability' of the informant's report in this particular case." *Id*. at 229, 103 SCt at 2327, 76 LEd2d 527.  An officer had to have facts sufficient to satisfy the *Aguilar* requirement in order to know that the informant was a credible source, or facts to show the tipster's information was reliable.  Aguilar v. Texas, 378 US 108, 114, 84 SCt 1509, 1514, 12 LEd2d 723 (1964).

[¶66.]     The "basis of knowledge" prong required an inquiry as to how the informant came by the information in his report.  *Gates*, 462 US at 228, 103 SCt at 2327, 76 LEd2d 527.  Questions to be asked in this prong of the test included:

> What are the raw facts upon which the informant based his conclusions?  How did the informant obtain those facts?  What precisely did he see or hear or smell or touch firsthand?  . . . He is concerned not with that part of an affidavit or testimony which provides information *about* the informant but with the recitation of the story coming *from* the informant.

Wayne R. LaFave, 2 Search And Seizure:  A Treatise On The Fourth Amendment § 3.3(d) (4th ed) (quoting Stanley v. State, 313 A2d 847 (MdCtSpecApp 1974) (citations omitted)).

> Thus, an informant's allegation that he saw the defendant in possession of counterfeit money is deemed sufficient without any explanation as to how it was determined that the money was counterfeit in character, and an assertion by an informant that he saw illegal drugs or the like at a certain place is regularly accepted without any showing as to how the informant was able to identify the substance.

*Id*. (citing Collins v. State, 502 SW2d 743 (TexasCrimApp 1973); Commonwealth v. Gelfont, 399 A2d 414 (PaSuperCt 1979) (holding that when an informant said he

"observed a large quantity of suspected marijuana," "the word 'suspected' [is] implied in all search warrants."). *See also* Christian v. McKaskle, 731 F2d 1196 (5th Cir 1984); Jackson v. State, 675 SW2d 820 (Ark 1984); State v. Kaukani, 577 P2d 335 (Haw 1978) (upholding search warrant in which affidavit stated informant "observed what appeared to be marijuana plant"); Capistran v. State, 759 SW2d 121 (TexCrimApp 1982) (holding layman is permitted to assert that a substance seen by him is marijuana without a showing in the affidavit of his qualifications to recognize it) (citations omitted). Thus, even prior to *Gates*, the "basis of knowledge" prong did not demand facts as to how the informant knew what he sensed was what he claimed it to be.

[¶67.]     Subsequently, the holding in *Gates*, which abandoned the two-prong *Aguilar-Spinelli* test, eliminated the need to excessively and technically dissect an informant's tip "with undue attention being focused on isolated issues that cannot sensibly be divorced from the other facts [known to the officer]." Massachusetts v. Upton, 466 US 727, 732, 104 SCt 2085, 2087, 80 LEd2d 721 (1984) (quoting *Gates*, 462 US at 234, 103 SCt at 2330, 76 LEd2d 527). Instead, "'reliability, veracity, and basis of knowledge' [remain] relevant considerations in finding probable cause; these considerations, however, are 'not independent, essential elements.'" *Gates*, 462 US at 230, 103 SCt at 2328, 76 LEd2d 527; *Raveydts*, 2004 SD 134, ¶8, 691 NW2d at 292 (quoting State v. Jackson, 2000 SD 113, ¶9, 616 NW2d 412, 416 (quoting United States v. Reivich, 793 F2d 957, 959 (8th Cir 1986))). "[A] deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Gates*, 462

US at 233, 103 SCT at 2329, 76 LEd2d 527 (citing Adams v. Williams, 407 US 143, 146-47, 92 SCt 1921, 1923-24, 32 LEd2d 612 (1972); Harris v. United States, 403 US 573, 91 SCt 2075, 20 LEd2d 723 (1971)). Furthermore, this Court has held that "each element of evidence need not be individually assessed for veracity and basis of knowledge. Rather, the probable cause determination is a function of 'the totality of relevant circumstances.'" State v. Krebs, 504 NW2d 580, 588 (SD 1993) (quoting State v. Zachodni, 466 NW2d 624, 629 (SD 1991) (quoting *Gates*, 462 US at 235, 103 SCt at 2330, 76 LEd2d 527; Massachusetts v. Upton, 466 US 727, 732, 104 SCt 2085, 2087, 80 LEd2d 721 (1984)).

[¶68.] While the special writing is correct that some jurisdictions require law enforcement to know how an informant knows the odor or appearance of marijuana, there is a split of authority on this issue. Most of the cases cited by the special writing merely note the basis of the informant's knowledge in passing without holding it a prerequisite for a finding of probable cause, or use basis of knowledge as an indicator of whether the informant is a citizen informant or an informant with a criminal record.[16] In *State v. Mordowanic*, 788 A2d 48 (Conn 2002), the

---

16. United States v. Patterson, 292 F3d 615, 626 (9thCir 2002), *opinion withdrawn by*, United States v. Patterson, 359 F3d 1190 (9thCir 2004), (no holding requiring the basis of knowledge of an informant be known to a magistrate at the time of the warrant application, but basis of knowledge detailed and noted by the court); People v. Schulle, 51 CalApp3d 809, 124 CalRptr 585 (1975) (holding 14-year old girl was citizen informant and presumptively reliable due to lack of motivation other than good citizenship, while also noting the basis of her knowledge as to the appearance of marijuana based on her numerous visual observations of it while at her parents' home); People v. Paris, 48 CalApp3d 766, 122 CalRptr 272 (1975) (informant was a citizen informant and presumptively reliable as a consequence of his motivation to report crime, and his experience as a reserve

(continued . . .)

Connecticut Supreme Court held a search warrant unconstitutional for lack of probable cause, as no facts were contained in the affidavit as to how the informant knew the odor he detected was that of marijuana. However, in that case the informant was an anonymous caller whose identity or title and place of work were not known to law enforcement rather than a citizen informant. *Id.* The Connecticut Supreme Court examined the anonymous informant's veracity, reliability and basis of knowledge and held all were highly relevant in determining probable cause. *Id.* at 58. However, the central focus was on the greater weight statements by an anonymous informant are given when corroborated by evidence independently

---

(. . . continued)

police officer trained to recognize the illegal substance noted but not relied upon for finding probable cause); State v. Morris, 444 So2d 1200 (La 1984) (prior usage of marijuana was material to determining informant's status as a citizen informant and therefore presumptively credible, rather than mere usage of marijuana in the past altering his status to that of a confidential or criminal informant who might have a reason to lie due to potential criminal penalties); State v. Swift, 556 NW2d 243 (Neb 1996) (holding that the unnamed apartment manager's tip as a citizen informant concerning the presence of marijuana was corroborated by a social worker whose basis of knowledge as to the appearance of marijuana was detailed. However, no holding was made by the court that the unnamed apartment manager's tip without information as to the basis of his knowledge was insufficient to support determination of probable cause); Patty v. Commonwealth, 235 SE2d 437, 439 (Va 1977) (recognizing that "[w]hile there is no requirement that a known reliable informant demonstrate the basis for his conclusion that the substance he observed was a narcotic, *Wheeler v. Commonwealth*, 217 Va 95, 98, 225 SE2d 400, 403 (1976), the informants here spoke from experience and not from mere supposition); State v. Doyle, 291 NW2d 545, 553-554 (Wis 1980) (court held the second prong of the *Aguilar-Spinelli* test, that the underlying circumstances or manner in which the informant obtained his information is reliable, was satisfied by the information two citizen informants provided to the police, which was based on their personal observations and one of the citizen informant's knowledge of marijuana gained while serving in Vietnam, but not specifically requiring the basis of knowledge be disclosed).

gathered by police. *Id.* at 58. In addition, the anonymous informant's basis of knowledge was established by merely claiming status as Vietnam Vet without verification or any explanation as to how he acquired his knowledge concerning the odor or appearance of marijuana. *Id.* at 58.

[¶69.] The only other case that supports the special writing's proposition is *State v. Rose*, 876 P2d 925 (WashApp 1994) (*Rose I*), *rev'd by*, State v. Rose, 909 P2d 280 (Wash 1996) (*Rose II*), which was eventually reversed based on the officer's plain view using a flashlight at night. In *Rose I*, an affidavit in support of a search warrant used as relevant facts a police officer's nighttime view, through a window in the defendant's shed located within the curtilage of the home, using a flashlight and the landlord's assertion that he had smelled marijuana on the property. *Id.* at 927-28. When the police officer's intrusive look in the shed was held unconstitutional, all that remained to support the warrant was the landlord's naked assertion that he smelled marijuana on the property. The Washington Court of Appeals held that the assertion alone, without any other corroborating facts to support it, was insufficient as it "would not lead a reasonable person to conclude that [the defendant] was involved in criminal activity." *Id.* at 932. That court noted that an assertion must be supported by more than a mere personal belief. *Id.* However, the Washington Supreme Court reversed the holding of the lower court without addressing the sufficiency of the landlord's tip. *Rose II*, 909 P2d 280.

[¶70.] Several cases cited by the special writing fail to support the need for facts concerning an informant's "basis of knowledge" due to other corroboration, or only support the proposition when no additional facts exist to corroborate an

informant's tip and the probable cause determination.  In *United States v. DeLeon*, 979 F2d 761 (9thCir 1992), it was ultimately omitted information in the affidavit that rendered the warrant deficient when nothing else was presented in support of the tip and witnesses contradicted the tipster's claims.  A named citizen informant reported that he had seen and smelled marijuana while two other witnesses had told him that they had seen and smelled marijuana.  *Id*. at 764.  However, when police interviewed those additional witnesses, one flatly denied seeing or smelling anything and another stated he only smelled growing marijuana.  *Id*.  Given that the "*only remaining peg* on which to hang the warrant" was the witness who claimed to smell the growing marijuana, that court determined that his qualification to recognize the odor of growing marijuana, or "basis of knowledge" was highly relevant.  *Id*. at 765.

[¶71.]    In *State v. Josephson*, 852 P2d 1387 (Idaho 1993), another case cited by the special writing, the police affidavit in support of the search warrant failed to include any basis of knowledge as to how the anonymous informant knew the plants he saw were marijuana, and did not describe the plants in any detail that would have enabled the magistrate to determine that what the caller saw was in fact marijuana or appeared to be marijuana.  *Id*. 1390.  In addition, the police failed to verify any of the information provided by the anonymous informant other than that the defendant lived at the address given by the caller.  *Id*.

[¶72.]    *State v. Eady*, 733 A2d 95 (Conn 1998) (*Eady I*), also provides no support for the special writing's proposition, as it was superseded on reconsideration by *State v. Eady*, 733 A2d 112 (Conn 1999) (*Eady II*).  In *Eady II*,

the Connecticut Supreme Court held that a reasonable and prudent person untrained in recognizing drugs "could have believed that the green, leafy substance inside the clear plastic bag located in plain view in the open cigar box in the defendant's locked bedroom was probably marijuana." *Id.* at 119. It then upheld the search under the plain view exception to the warrant requirement. *Id.*

[¶73.] The greater weight of the authority falls to those jurisdictions that do not require law enforcement to know facts concerning a citizen informant's basis of knowledge, which include Montana, Nebraska, Virginia and Wisconsin. *See* State v. Griggs, 34 P3d 101, 104 (Mont 2001); State v. Lammers, 676 NW2d 716, 725 (Neb 2004); Wheeler v. Commonwealth, 225 SE2d 400, 403 (Vir 1976); State v. Paszek, 184 NW2d 836 (Wis 1971). The Montana Supreme Court has held that "[i]nformation supplied by a 'concerned citizen' . . . whose identity is known, who personally observes the alleged criminal activity, and who openly risks liability by accusing another person of criminal activity - may not need further law enforcement corroboration[.]" *Griggs*, 34 P3d at 104. Only when the tip is provided by an anonymous caller or a confidential informant has the Montana Supreme Court required corroboration of more than innocuous facts to support a probable cause determination. *See id.*; State v. Gray, 38 P3d 775,779 (Mont 2001).

[¶74.] Similarly, the Nebraska Supreme Court has held a citizen witness's "detailed eyewitness report of a crime may be self-corroborating because it supplies its own indicia of reliability." *Lammers*, 676 NW2d at 725. That court also upheld a finding of probable cause based on a bank employee's tip as a citizen informant of seeing a plastic baggie corner containing a yellow-powdered substance on the floor

of the bank in nearly the same spot where the defendant had been standing minutes before while rummaging through his pockets. State v. Marcus, 660 NW2d 837 (Neb 2003). No special knowledge was required of the bank employee concerning how drugs are packaged or their appearance. *Id*. That court held that the lack of an "apparent motive other than good citizenship in reporting the observations made a citizen informant's eye witness observation of drugs presumptively reliable." *Id*. at 842-843.

[¶75.] The Supreme Court of Virginia has recognized that "there is no requirement that a known reliable informant demonstrate the basis for his conclusion that the substance he observed was a narcotic." *Wheeler*, 225 SE2d at 403. Similarly, the Wisconsin Supreme Court upheld a probable cause determination based on a citizen informant's tip that she observed marijuana. *Paszek*, 184 NW2d 836. That court reasoned that although the citizen informant was not a chemist or an expert on drugs, "an expert's opinion is not required at the probable cause stage of the criminal proceedings to establish that the substance at issue was a controlled substance such as marijuana." *Id*. at 842.

*Budget Host Manager as a Citizen Informant*

[¶76.] "[I]f an unquestionably honest citizen comes forward with a report of criminal activity - which if fabricated would subject him to criminal liability - we have found rigorous scrutiny of the basis of his knowledge unnecessary." *Gates*, 462 US at 233-34, 103 SCt at 2330, 76 LEd2d 527 (citing *Adams*, 407 US at 146-147, 92 SCt at 1923-24, 32 LEd2d 612). That is because tips from citizen informants "are more likely to be reliable than information from informants; 'the ordinary citizen

who has never before reported a crime to the police may, in fact, be more reliable than one who supplies information on [a] regular basis.'" State v. Lownes, 499 NW2d 896, 899 (SD 1993) (quoting United States v. Harris, 403 US 573, 91 SCt 2075, 29 LEd2d 723 (1971)) (citing State v. McCloskey, 453 NW2d 700, 703-04 (Minn 1990); Marben v. State, Dept. of Public Safety, 294 NW2d 697, 699 (Minn 1980)). A tip based on an "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [the informant's] tip to greater weight than might otherwise be the case." *Gates*, 462 US at 234, 103 SCt at 2330, 76 LEd2d 527.

[¶77.] The Court appears to categorize the Budget Host manager as an anonymous informant, and evaluates his "reliability, veracity, and basis of knowledge" using cases involving anonymous tipsters. *See supra* ¶¶19-21. The Budget Host manager is more properly classified as a citizen informant as he gave his title and place of work, which was then relayed to Hamann by dispatch. *See Lammers*, 676 NW2d at 725 (noting "that identification of the informant's occupation alone is sufficient to negate a claim that the informant was anonymous.") (citing United States v. Pasquarille, 20 F3d 682 (6thCir 1994); City of Maumee v. Weisner, 720 NE2d 507, 514 (Ohio 1999)). Therefore, the Budget Host manager more properly qualifies as a voluntary and identified citizen informant rather than an anonymous informant. As a citizen informant, it is not necessary to rigorously examine the basis of his knowledge.

[¶78.] It is true that the Budget Host manager detected the presence of marijuana via his olfactory sense rather than through visual observation. However,

some courts have "long recognized that marijuana has a distinct smell and that the odor of marijuana alone can satisfy the probable cause requirement to search a vehicle or baggage." United States v. Morin, 949 F2d 297, 300 (10thCir 1991) (citing United States v. Merryman, 630 F2d 780, 785 (10thCir 1980); United States v. Sperow, 551 F2d 808, 811 (10thCir 1977), *cert. denied*, 431 US 930, 97 SCt 2634, 53 LEd2d 245 (1977); United States v. Bowman, 487 F2d 1229, 1231 (10thCir 1973)). These cases have typically pertained to law enforcement officers detecting the odor of marijuana. However, not all jurisdictions require that an officer provide the basis of his knowledge of the odor of marijuana in order to establish probable cause. *See* United States v. Turner, 431 F3d 332, 337 (8thCir 2005) (upholding district court's finding of probable cause based on law enforcement officers' statements that defendant smelled strongly of marijuana when they encountered him in a public bar); United States v. Carr, 92 FSupp2d 1137, 1141-42 (D Kan 2000) (upholding law enforcement officer's affidavit asserting he smelled marijuana despite the failure to provide a basis for his ability to recognize the odor of marijuana) (citing United States v. Ludwig, 508 F2d 140, 141 (10thCir 1974) (holding inherent in officer's statement that he smelled marijuana is the claim that he is familiar with substance's odor).

[¶79.]     The facts of this case meet the threshold requirement of "reasonably trustworthy information." The hotel manager called Lawrence County dispatch and identified himself by title. He gave a detailed account of what he had perceived via his sense of smell: "The hallway smells of marijuana, as well as the two rooms that they were staying in. (Room 23 and Room 24)." He then provided information that

four male guests had just left the Budget Host Hotel, provided a description of the vehicle, its license plate number and state of issue, and the general direction of the vehicle's travel. Hamann corroborated the physical description of the vehicle, the license plate number and the direction of travel, and occupancy by four males when he spotted Sweedland's car; he then initiated the stop.

[¶80.]    What is at issue then, is whether the citizen informant tip plus the corroboration of the non-criminal conduct and appearance of Sweedland and his passengers rose to the level of probable cause, sufficient "to warrant a man of reasonable caution in the belief that" these were the individuals who had been smoking marijuana at the hotel in violation of SDCL 22-42-15.[17]  If yes, then Hamann had probable cause to stop the vehicle and conduct the search from the very beginning of the encounter. If the facts rose only to the level of reasonable suspicion for a *Terry* investigative stop, the question then becomes did anything occur during the stop that provided the additional facts necessary for reasonable suspicion to ripen into probable cause.

*Probable Cause to Search the Vehicle*

[¶81.]    The Court concedes that it was reasonable for Hamann to conclude that one who had been using marijuana shortly before a stop might also possess marijuana. *Supra* ¶25. Despite this concession, the Court goes on to state that

---

17.    SDCL 22-42-15 provides in relevant part:
Any person who intentionally ingests, inhales, or otherwise takes into the body any substance, except alcoholic beverages as defined in § 35-1-1, for purposes of becoming intoxicated, unless such substance is prescribed by a practitioner of the medical arts lawfully practicing within the scope of the practitioner's practice, is guilty of a Class 1 misdemeanor.

"Hamann could not infer possession without first corroborating the allegation of marijuana use." However, Hamann was not required to infer possession before conducting the search. Hamann had all that he needed when he inferred that the crime of ingestion of a controlled substance had occurred based on the motel manager's tip and his corroboration of the license plate number, direction of travel, and gender of the four occupants. *See supra* ¶24. His original belief that evidence of the crime of ingestion of a controlled substance would be found in the vehicle was sufficient for a determination of probable cause and justified the search for evidence of a violation of SDCL 22-42-15. The fact that the search produced evidence of other crimes different[18] from the original crime for which probable cause was originally established, ingestion of a controlled substance under SDCL 22-42-15, cannot invalidate the search. *See Peterson*, 407 NW2d at 224.

[¶82.] In *Peterson*, an officer stopped a vehicle due to erratic driving and detected the smell of alcohol coming from the vehicle and emanating from the driver. *Id.* at 222. We held that the smell of alcohol on the driver justified a warrantless search of an automobile for further evidence of crime. *Id.* at 223. The search in that case was for an open container, a violation of SDCL 35-1-1.9, a Class 2 Misdemeanor. The officer found one open beer can that appeared at first glance to be empty, and then proceeded to search the entire car and its contents for additional open containers. *Id.* The driver in *Peterson* was able to pass the field sobriety tests,

---

18. Sweedland was eventually charged, tried and convicted of Possession of Marijuana (more than ten pounds) under SDCL 22-42-6, Possession of Marijuana with Intent to Distribute under SDCL 22-42-7, and Possession of Drug Paraphernalia under SDCL 22-42A-3.

but the odor of alcohol provided sufficient probable cause for a search of the vehicle for open containers. *Id.* During the final phase of the search for open containers, law enforcement found drug paraphernalia and some marijuana. *Id.* at 224. We upheld the search under the "automobile exception" despite the fact that the original search was based on probable cause to believe that the driver had an open container of alcohol in the car. *Id.*

[¶83.] In the instant case, the tip from the motel manager provided "reasonably trustworthy" information that the offense of ingestion of a controlled substance under SDCL 22-42-15, a Class 1 misdemeanor, had occurred. Based on the tip and the corroborating information confirmed by Hamann, it was reasonable for law enforcement to conclude that a search of the vehicle would generate evidence that the occupants had violated SDCL 22-42-15. The occupants were traveling from Deadwood back to their homes in Montana with their possessions, including their luggage and car. It was reasonable for law enforcement to believe that evidence of the crime of ingestion of a controlled substance would be inside the car or their luggage, either in the form of drug paraphernalia or evidence of residue of marijuana, as Sweedland and his companions had just departed the motel.

*Pipes and Screens as Facts Supporting Probable Cause Determination*

[¶84.] Finally, even if we were to assume that the Budget Host manager's tip along with the innocuous facts corroborated by Hamann were deficient for a finding of probable cause to search the vehicle under the automobile exception, the Court still fails to consider the last corroborating fact known to Hamann immediately prior to the search of the car. After asking the passengers for their consent to

conduct a pat search, but before Teasdale was physically touched by the officer and before there was any indication from Hamann that the stop had concluded and the four men were free to go, Teasdale produced from his coat pocket screens and two *unused* one-hit pipes.

[¶85.] Hamann admitted at the suppression hearing that the pipes could be used to smoke tobacco as well as marijuana. But that concession did not negate Hamann's common sense determination at the time of the stop that the report of the smell of marijuana from a reliable citizen informant coupled with the presence of *unused* drug paraphernalia "was sufficient for a common sense decision that there was a *fair probability*" that marijuana had been ingested by the occupants of Sweedland's car, that the pipes were recently purchased in order to ingest additional quantities of marijuana, and that the additional quantities of marijuana the occupants planned on ingesting were already in the car.[19]

[¶86.] Based on the facts of this case, the authorities cited, and the common sense inferences made by Hamann, I would uphold the circuit court's conclusion that probable cause to search Sweedland's vehicle existed at the time of the stop.

---

19. The circuit court held that the State failed to show by a preponderance of the evidence that the three passengers knowingly and voluntarily consented to the pat search when asked by Hamann. However, the circuit court also correctly concluded that Sweedland could not assert a legitimate privacy interest in Teasdale's pat down search sufficient to support a motion for suppression. Therefore, we need not specifically consider whether Teasdale's consent was voluntary. The voluntariness of the pat search is even less significant in light of the fact that Teasdale produced the items before he was pat searched by Hamann.